1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   AMILCAR GUEVARA,

11          Plaintiff,                    No. 2:09-cv-1132 KJM KJN P

12   vs.

13   A. RALLS, et al.,                    ORDER AND

14          Defendants,                   FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17          Plaintiff, a state prisoner proceeding without counsel, seeks relief pursuant to

18   42 U.S.C. § 1983.  On February 17, 2012, the newly-assigned district judge vacated the August

19   11, 2011 order, and remanded this case to the undersigned for further proceedings.  Upon

20   reconsideration, the undersigned vacates the May 4, 2011 (dkt. no. 100) and August 24, 2011

21   (dkt. no. 119) findings and recommendations, and issues the following findings and

22   recommendations on defendants' motions for summary judgment.

23          This case is proceeding on the verified original complaint, filed April 24, 2009.

24   Plaintiff alleges that defendant Scruggs used excessive force against plaintiff; defendant Ramirez

25   used force and verbally threatened plaintiff during an escort; defendant McCarvel, responsible for

26   the housing unit, was indifferent to the use of force on plaintiff, and defendant Ralls used

1

excessive force on plaintiff.  Before the court are defendants' motions for summary judgment.

(Dkt Nos. 85 & 102.)  As explained more fully below, the court recommends that the motions for

summary judgment be granted in part and denied in part.

II.  Motions for Summary Judgment

Defendants move for summary judgment on the grounds that plaintiff's action is

barred by Heck v. Humphrey, 512 U.S. 477 (1994), and Edwards v. Balisok, 520 U.S. 641

(1997).  Defendants also seek summary judgment on the grounds that they acted in good faith to

restore order and maintain discipline.  Defendant Ramirez also moves for summary judgment on

the ground that plaintiff alleges defendant Ramirez verbally threatened plaintiff, which fails to

state a claim under the Eighth Amendment.  Defendant McCarvel also seeks summary judgment

on the ground that absent personal involvement in the alleged deprivation, McCarvel cannot be

held liable.

A.  Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set

forth in Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law. "  Fed. R. Civ. P. 56(a).[1]

> Under summary judgment practice, the moving party always bears
> the initial responsibility of informing the district court of the basis
> for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove

---

[1]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

that there is an absence of evidence to support the non-moving party's case." Nursing Home
Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th
Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory
committee's notes to 2010 amendments (recognizing that "a party who does not have the trial
burden of production may rely on a showing that a party who does have the trial burden cannot
produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment
should be entered, after adequate time for discovery and upon motion, against a party who fails to
make a showing sufficient to establish the existence of an element essential to that party's case,
and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.
"[A] complete failure of proof concerning an essential element of the nonmoving party's case
necessarily renders all other facts immaterial."  Id. at 323.

        Consequently, if the moving party meets its initial responsibility, the burden then
shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.
See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting
to establish the existence of such a factual dispute, the opposing party may not rely upon the
allegations or denials of its pleadings, but is required to tender evidence of specific facts in the
form of affidavits, and/or admissible discovery material in support of its contention that such a
dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party
must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914
F.2d 1564, 1575 (9th Cir. 1990).

////

1    In the endeavor to establish the existence of a factual dispute, the opposing party

2 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

3 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

4 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary

5 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

6 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

7 committee's note on 1963 amendments).

8    In resolving a summary judgment motion, the court examines the pleadings,

9 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

10 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

11 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

12 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

13 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

14 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

15 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

16 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

17 show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken

18 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

19 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

20    By order filed October 27, 2009, the court advised plaintiff of the requirements for

21 opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Dkt.

22 No. 19); see Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v.

23 Eikenberry, 849 F.2d 409 (9th Cir. 1988).

24 ////

25 ////

26 ////

B. Undisputed Facts

For purposes of the instant motion for summary judgment, the court finds the following facts undisputed.[2]

1. Plaintiff was in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at the California State Prison-Sacramento ("CSP-SAC") on April 30, 2007.

2. Defendants Scruggs, Ramirez, and Ralls are correctional officers employed by the CDCR and were assigned to CSP-SAC on April 30, 2007. Defendant McCarvel is a correctional sergeant employed by CDCR and was assigned to CSP-SAC on April 30, 2007.

3. On April 30, 2007, defendant Scruggs[3] was the Facility C, Housing Unit 4, Floor Officer working the Third Watch, which is from 2:00 p.m. to 10:00 p.m. At approximately 5:40 p.m., defendant Scruggs was processing a group of inmates from Housing Unit 4 to attend an Alcoholics Anonymous ("AA") meeting outside of the building. Processing includes conducting clothed body searches that allow staff to check for weapons and/or contraband.

4. Plaintiff was one of the inmates leaving the building to attend an AA meeting. During the clothed body search of plaintiff, defendant Scruggs noticed that plaintiff was holding a cup and an unidentified object in plaintiff's right hand. Defendant Scruggs asked plaintiff what was in plaintiff's hand, and plaintiff replied that it was a "kite," or note. Defendant Scruggs asked plaintiff to show him the kite, and plaintiff allowed defendant to see the kite in his hand.

////

---

[2]  In connection with the September 24, 2010 motion for summary judgment, plaintiff failed to provide a declaration or affidavit signed under penalty of perjury as required by Rule 56 of the Federal Rules of Civil Procedure. However, the complaint is verified (dkt. no. 1 at 9), and so may be deemed an affidavit for purposes of summary judgment. Moran v. Selig, 447 F.3d 748, 760 n.16 (9th Cir. 2006). On July 28, 2011, plaintiff filed a declaration in support of his opposition to defendant Ralls' May 11, 2011 motion for summary judgment. (Dkt. No. 114 at 27-29.)

[3]  As noted by plaintiff, defendant Scruggs' "declaration" is not signed under penalty of perjury. Only facts as to defendant Scruggs that are undisputed by plaintiff are included here.

1    5. Defendant Scruggs told plaintiff that defendant Scruggs needed to see the note.

2 Plaintiff did not give the note to defendant Scruggs, and told Scruggs, "I can't do that." (Dkt.

3 No. 88 at 3, 6.)[4]  Plaintiff concedes that once he saw Scruggs unstrap his pepper spray, plaintiff

4 "decided to move away from Officer Scruggs." (Dkt. No. 88 at 7.)

5    6. What happened next is the subject of a CDCR Rules Violation Report

6 regarding the use of force during the April 30, 2007 incident that followed.  Plaintiff was charged

7 with "Resisting Staff Resulting in the Use of Force," Log No. C07-04-101.  Defendants Scruggs,

8 Ramirez and McCarvel wrote reports describing what they observed during the incident, which

9 were included in the CDCR 837 Crime/Incident Report Log #SAC-FAC-07-04-0321, dated April

10 30, 2007.[5]

11

---

12   [4]  Plaintiff later argues that he "did not refuse to relinquish the item kite . . . [plaintiff] just informed [Scruggs] that [plaintiff] couldn't do as [Scruggs] asked of [him]. (Dkt. No. 114 at 12.)

13 Such an argument is a distinction without a difference, despite plaintiff's position that willingly turning over the kite would put plaintiff at risk of being labeled a snitch.

14

15   [5]  In pertinent part, the report states defendant Scruggs "grabbed [plaintiff] by the back of his shirt and ordered him to get down on the ground. [Plaintiff] attempted to break away from

16 my grasp and turned back around towards me.  [Scruggs] sprayed [plaintiff] in the upper body and face area with [his] MK9X Oleoresin Capsicum (OC) pepper spray.  [Plaintiff] laid face

17 down on the sidewalk in front of C4-Block.  [Scruggs] released [his] grasp on [plaintiff's] shirt and activated [his] personal alarm." (Dkt. No. 85-6 at 21.)

18   Defendant Ramirez wrote:  "On 4/30/2007 at approximately 1740 hours, I responded to an alarm in front of Facility C Four (4) block.  Upon my arrival, I assisted Officer R. McCleod in

19 placing handcuffs on [plaintiff].  I observed Sergeant A. Ralls attempt to gain control of [plaintiff's] lower jaw.  I immediately grabbed [plaintiff] by his legs to help Sergeant A. Ralls

20 with retrieving the contraband as [plaintiff] appeared to be attempting to escape from Sergeant A. Ralls.  [Plaintiff] then spit the contraband out of his mouth.  Officer McCleod and I escorted him

21 to C-Facility Pedestrian Sally-port Holding Cell Number Seven (7). . . . (Dkt. No. 85-4 at 5.)

22   Defendant McCarvel wrote, in pertinent part:  Once [McCarvel] arrived at the incident location[,] [McCarvel] observed Correctional staff place [plaintiff] into handcuffs.  It appeared

23 [plaintiff] had been sprayed with Oleoresin Capsicum Pepper Spray.  [McCarvel] heard [plaintiff] gagging, and choking on an unknown substance / object.  Officer S. Ramirez shouted

24 orders for [plaintiff] to spit the substance out of his mouth with negative results.  Correctional Sergeant A. Ralls placed his right arm around [plaintiff's] upper chest and leaned him forward so

25 the substance / object could easily fall out of his mouth.  With the assistance of Sergeant Ralls, [plaintiff] was able to successfully spit a chewed up note out of his mouth allowing him to

26 breathe clearly again.  This concluded my involvement with this incident. (Dkt. No. 85-3 at 5.)

1    7.  In his verified complaint, plaintiff states that he suffered a scratch/abrasion to

2  his knee, "swollen soreness pain to throat," and had difficulty swallowing.  (Dkt. No. 1 at 12.)

3  The rules violation report reflects that plaintiff sustained a "reddened area on [his] face and chest

4  area due to O.C. Pepper spray."  (Dkt. No. 85-6 at 8.)

5    8.  Plaintiff alleges that defendant Scruggs used excessive force during the use of

6  force incident on April 30, 2007.[6]

7    9.  At some point during this use of force incident on April 30, 2007, defendant

8  Ralls used force on plaintiff.[7]  Plaintiff alleges defendant Ralls' use of force was excessive.

9    10.  At some point during this use of force incident on April 30, 2007, defendant

10  Ramirez used force on plaintiff.

11    11.  Plaintiff was found guilty of a Division D offense, Resisting Staff Resulting

12  in the Use of Force for rules violation Log No. C07-04-101.  Plaintiff was assessed a credit loss

13  of 90 days.  Plaintiff's time credits were subsequently restored under California Code of

14  Regulations, Title 15, §§ 3327 & 3328, because plaintiff remained disciplinary-free.

15

16    [6] Plaintiff contends defendant Scruggs threatened to use a weapon on plaintiff, causing
   plaintiff to move away.  (Dkt. No. 1 at 11.)  Scruggs then "yanked [plaintiff] from the back of
17  [his] shirt causing [plaintiff] to bounce backwards."  (Id.)  Plaintiff avers Scruggs would not let
   go of plaintiff's shirt so that plaintiff could get in the prone position.  Scruggs then, allegedly
18  without provocation or threat from plaintiff, pepper-sprayed plaintiff on the face and body, which
   Scruggs allegedly continued to do, even after plaintiff assumed the prone position.  (Id.)  Plaintiff
19  contends that Scruggs did not ask plaintiff to submit to handcuffs, and that Scruggs was aware
   there was no danger of weapons because Scruggs had patted down and searched plaintiff.  (Dkt.
20  No. 1 at 13.)

21    [7] In his declaration, defendant Ralls states that on April 30, 2007, he responded to an
   alarm, and saw plaintiff "secured by other responding staff who were instructing [plaintiff] to
22  'Spit it out!'  At that time, [Ralls] observed [plaintiff] attempting to chew and swallow an object.
   . . . [Ralls] then grabbed the plaintiff around his lower jaw area while instructing the plaintiff to
23  'Spit it out!'  The plaintiff eventually spit out the object and [Ralls] released him immediately."
   (Dkt. No. 104 at 2.)

24
   Plaintiff contends defendant Ralls "wrapped his arm around [plaintiff's] throat,"
25  "slammed" plaintiff to the ground by plaintiff's neck/throat in a choke hold position, and began
   choking plaintiff by squeezing plaintiff's throat.  (Dkt. No. 1 at 11.)  "[A]while later [Ralls]
26  eased up on the choke hold."  (Id. at 12.)

III.  Additional Evidence

On February 17, 2012, the district court directed defendants to provide a copy of the "video CD" of the April 30, 2007 use of force incident.  On February 29, 2012, defendants lodged a copy of the video CD, which this court viewed in connection with the pending motions.

IV.  Favorable Termination Rule

Defendants move for summary judgment on plaintiff's excessive use of force claims on the ground that the claims are Heck-barred.  Defendants are correct that, generally speaking, a plaintiff may not bring a civil rights action pursuant to § 1983 arising out of alleged unconstitutional activities that resulted in his conviction unless the conviction has been set aside.  See Heck v. Humphrey, 512 U.S. 477 (1994) (dismissing § 1983 action for damages based on "actions whose unlawfulness would render a conviction or sentence invalid" when the conviction or sentence has not yet been reversed, expunged, or otherwise invalidated).  See also Edwards v. Balisok, 520 U.S. 641, 648 (1997) (dismissing § 1983 action for declaratory relief and monetary damages because successful challenge to procedures used in disciplinary hearing would necessarily imply the invalidity of the punishment imposed).

However, a conviction for resisting a peace officer under California law does not necessarily preclude an excessive use of force claim pursuant § 1983.  See Hooper v. County of San Diego, 629 F.3d 1127 (9th Cir. 2011) (Fourth Amendment excessive force claim not Heck-barred because "[a] holding in Hooper's § 1983 case that the use of the dog was excessive force would not "negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of [Hooper's] attempt to resist it [when she jerked her hand away from Deputy Terrell].");  Smith v. City of Hemet, 394 F.3d 689, 699 (9th Cir. 2005) ("[A] § 1983 action is not barred under Heck unless it is clear from the record that its successful prosecution would necessarily imply or demonstrate that the plaintiff's earlier conviction was invalid.").

California district courts have determined that Eighth Amendment claims under circumstances similar to those presented here are not Heck-barred.  See Green v. Goldy, 2011

1  WL 2445872 (E.D. Cal. 2011) (prisoner's excessive force claim not <u>Heck</u>-barred because two

2  factual predicates exist, one giving rise to the disciplinary conviction, and the other giving rise to

3  a potential civil claim for excessive force); <u>El -Shaddai v. Wheeler</u>, 2011 WL 1332044, at *5

4  (E.D. Cal. Apr. 5, 2011) (finding that an Eighth Amendment excessive use of force claim is not

5  <u>Heck</u>-barred because "a judgment for plaintiff on his Eighth Amendment claim would not

6  necessarily imply the invalidity of his disciplinary conviction" for willfully resisting a peace

7  officer); <u>Gipbsin v. Kernan</u>, 2011 WL 533701, at *5-*7 (E.D. Cal. Feb. 11, 2011) (finding that an

8  Eighth Amendment excessive use of force claim is not <u>Heck</u>-barred because success on

9  plaintiff's claim would not necessarily negate his disciplinary conviction for battery on a peace

10  officer or his criminal conviction in state court for battery); <u>Meadows v. Porter</u>, 2009 WL

11  3233902, at *2 (E.D. Cal. Oct. 2, 2009) (finding that an Eighth Amendment excessive use of

12  force claim is not <u>Heck</u>-barred because a finding that an officer "responded to the attempted

13  battery with excessive force would not negate any of the elements of attempted battery.  And

14  although the two incidents are closely related and occurred one right after the other, they are

15  separate and distinct events."); <u>Candler v. Woodford</u>, 2007 WL 3232435, at *8 (N.D. Cal. Nov.

16  1, 2007) (finding that an Eighth Amendment excessive use of force claim is not <u>Heck</u>-barred

17  because "defendants have not shown that if plaintiff were to prevail on his excessive force claims

18  the validity of the finding that he committed battery on a peace officer necessarily would be

19  implicated").

20  　　　　Here, plaintiff was convicted of "Resisting Staff Resulting in the Use of Force"

21  under § 3005(c) of the California Code of Regulations.  Cal. Code of Regs., tit. 15, § 3005(c).[8]

22

23  　　　[8]  This subsection was re-lettered on December 28, 2007, and amended to provide:

24  　　　Inmates shall not willfully commit or assist another person in the commission of
　　　an assault or battery to any person or persons, nor attempt or threaten the use of

25  　　　force or violence upon another person.

26  Cal. Code of Regs., tit. 15 §3005(d)(1).

1    In this case, plaintiff's success on his Eighth Amendment excessive use of force

2 claim would not necessarily imply the invalidity of the disciplinary conviction under § 3005.  For

3 plaintiff to succeed on his excessive use of force claim, he must prove that defendants

4 unnecessarily and wantonly inflicted pain on him during the use of force incident on April 30,

5 2007.  Whitley v. Albers, 475 U.S. 312, 320 (1986).  A number of factors will be relevant to

6 determine whether defendants' use of force violated plaintiff's rights under the Eighth

7 Amendment, including (1) the need for force, (2) the relationship between the need for force and

8 the amount of force used, (3) the extent of the injury inflicted, (4) the extent of the threat the

9 officers reasonably perceived the plaintiff posed to staff and inmates, and (5) any efforts to

10 temper the severity of a forceful response.  Id. at 321.

11    Under the evidence presented in connection with the summary judgment motion, a

12 reasonable factfinder could conclude both that plaintiff's conduct on April 30, 2007 violated

13 § 3005(c), and that defendants used excessive force in response to plaintiff's conduct.  Such

14 findings would not necessarily imply the invalidity of plaintiff's disciplinary conviction.

15 Although plaintiff's conduct and these defendants' alleged excessive use of force arise out of the

16 same incident, two separate factual predicates exist, the first giving rise to plaintiff's disciplinary

17 conviction, and the second giving rise to defendants' potential civil liability.  See Hooper, 629

18 F.3d at 1132  ("Though occurring in one continuous chain of events, two isolated factual

19 contexts would exist, the first giving rise to criminal liability on the part of the criminal

20 defendant, and the second giving rise to civil liability on the part of the arresting officer.")

21 (quoting Yount v. City of Sacramento, 43 Cal.4th 885, 899 (2008)).  Accordingly, the court

22 concludes that plaintiff's excessive use of force claims against defendants are not Heck-barred.

23 V.  Defendant Scruggs

24    Plaintiff claims that on April 30, 2007, defendant Scruggs was the primary officer,

25 and responsible for the incident involving use of force.  (Dkt. No. 1 at 10.)  Plaintiff claims

26 defendant Scruggs used excessive force when Scruggs grabbed plaintiff by the back of his shirt,

1   causing plaintiff to bounce backwards, and preventing him from moving to the prone position.

2   (Dkt. No. 1 at 11.)  Plaintiff states that then, without provocation or threat from plaintiff,

3   defendant Scruggs, pepper-sprayed plaintiff "on the face (body)," and continued to pepper-spray

4   plaintiff even after plaintiff assumed the prone position.  (Dkt. No. 1 at 12.)  It is undisputed that

5   plaintiff was found guilty of "Resisting Staff Resulting in the Use of Force."  Plaintiff seeks

6   damages for the alleged use of excessive force.  (Dkt. No. 1 at 3.)

7               A.  Use of Force Standards

8               The Eighth Amendment prohibits the infliction of "cruel and unusual

9   punishments."  U.S. Const. amend. VIII.  The "unnecessary and wanton infliction of pain"

10  constitutes cruel and unusual punishment prohibited by the United States Constitution.  Whitley,

11  475 U.S. at 319.  Neither accident nor negligence constitutes cruel and unusual punishment, as

12  "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the

13  conduct prohibited by the Cruel and Unusual Punishments Clause."  Id.

14              What is needed to show unnecessary and wanton infliction of pain "varies

15  according to the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S.

16  1, 5 (1992) (citing Whitley, 475 U.S. at 320).  To prevail on an Eighth Amendment claim the

17  plaintiff must show that objectively he suffered a "sufficiently serious" deprivation.  Farmer v.

18  Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).  The plaintiff

19  must also show that subjectively each defendant had a culpable state of mind in allowing or

20  causing the plaintiff's deprivation to occur.  Farmer, 511 U.S. at 834.

21              It is well established that "whenever prison officials stand accused of using

22  excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core

23  judicial inquiry is that set out in Whitley, i.e., whether force was applied in a good-faith effort to

24  maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson, 503 U.S.

25  at 6-7.  A prisoner is not required to show a "significant injury" to establish that he suffered a

26  sufficiently serious constitutional deprivation.  Id., 503 U.S. at 9-10.

1    Factors such as the need for the application of force, the relationship between the

2 need and amount of force that was used, and the extent of injury inflicted are relevant to the

3 ultimate determination as to whether force used by prison personnel was excessive. From these

4 factors, inferences may be drawn as to whether the use of force could plausibly have been

5 thought necessary, or instead evinced such wantonness with respect to the unjustified infliction

6 of harm as is tantamount to a knowing willingness that it occur. "Equally relevant are such

7 factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the

8 responsible officials on the basis of facts known to them, and any efforts made to temper the

9 severity of a forceful response." Whitley, 475 U.S. at 321.

10    Thus, there is no Eighth Amendment violation if "force was applied in a

11 good-faith effort to maintain or restore discipline." Hudson, 503 U.S. at 7. Courts accord

12 wide-ranging deference to prison administrators in the exercise of policies and practices that in

13 their judgment are needed to preserve internal security, safety and discipline. Whitley, 475 U.S.

14 at 322-23. The infliction of pain in the course of implementing prison security measures does not

15 amount to cruel and unusual punishment even though it may appear, in hindsight, the degree of

16 force was unreasonable. Id. at 319. An allegation of cruel and unusual punishment should

17 proceed to trial only if the evidence supports a reliable inference that the prison official intended

18 to inflict pain. Id. at 322.

19    Defendant Scruggs seeks summary judgment on the ground that he acted in good

20 faith to restore order and maintain discipline. Essentially, defendant contends that the evidence

21 establishes defendant Scruggs did not intend to harm plaintiff during the use of force.

22    In plaintiff's verified complaint, plaintiff claims that defendant Scruggs threatened

23 to use pepper spray on plaintiff, causing plaintiff to move away from Scruggs. (Dkt. No. 1 at 11.)

24 Plaintiff alleges defendant Scruggs then yanked plaintiff from the back of his shirt, causing him

25 to bounce backwards, and that the hold on plaintiff's shirt prevented plaintiff from getting in the

26 prone position. Plaintiff avers that without provocation from him, defendant Scruggs then started

to pepper spray plaintiff on the "face (body)" which he continued to use, even when [plaintiff] had assumed the prone position."  (Dkt. No. 1 at 11.)

Although plaintiff contends that he followed defendant Scruggs' orders, and showed defendant Scruggs the kite in plaintiff's hand, plaintiff concedes that he did not give defendant Scruggs the kite.  The video[9] shows plaintiff moving quickly away from defendant Scruggs.  Defendant Scruggs pursued plaintiff, and in a matter no more than of six or seven seconds, plaintiff was prone on the ground.  Moreover, within one second of plaintiff being prone on the ground, other officers arrived and defendant Scruggs walked away from plaintiff.

The undisputed facts indicate defendant Scruggs was reacting to a situation created by plaintiff, who refused to turn over the kite upon defendant Scruggs' request.  The video demonstrates that defendant Scruggs used pepper spray in an effort to stop plaintiff and restore order.  While plaintiff could potentially question whether or not defendant Scruggs used more force than was necessary, or used more pepper spray than was required, the video shows defendant Scruggs reacting in a matter of seconds.  No reasonable juror viewing the video would find defendant Scruggs acted maliciously or sadistically to cause harm to plaintiff.  Plaintiff adduced no evidence demonstrating defendant Scruggs acted with a culpable state of mind.

The evidence viewed in a light most favorable to plaintiff indicates that the force used was reasonable and was not intended to harm plaintiff; rather, it was used to "preserve internal order and discipline and to maintain institutional security."  Whitley, 475 U.S. at 322-23 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979).  There are no facts in evidence that defendant Scruggs' actions could have caused extreme risk to plaintiff's health or safety, or that plaintiff suffered a serious injury as a result of the use of force by defendant Scruggs.

Accordingly, the motion for summary judgment on plaintiff's excessive use of force claim against defendants Scruggs should be granted.

---

[9]  The video CD is not accompanied by audio, it is strictly video.

VI.  <u>Defendant Ralls</u>

Plaintiff's claim against defendant Ralls presents a closer question.  Plaintiff alleges that on April 30, 2007, defendant Ralls used excessive force when defendant Ralls allegedly wrapped his arm around plaintiff's throat, slammed plaintiff to the ground, and began choking plaintiff.  (Dkt. No. 1 at 11.)  Defendant Ralls seeks summary judgment on the ground that he acted in good faith to restore order and maintain discipline.  Defendant Ralls declares that he did not act with the intent to cause unnecessary pain to plaintiff, but to recover the contraband to maintain the security of the institution.  (Dkt. No. 104 at 2.)  Essentially, defendant contends that the evidence establishes defendant Ralls did not intend to harm plaintiff, but was trying to get plaintiff to turn over the kite that plaintiff placed in his own mouth.  Alternatively, defendant Ralls claims that he is entitled to qualified immunity.

Whenever a prison official is accused of using excessive physical force against a prison inmate in violation of the Eighth Amendment, the central inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  <u>Hudson</u>, 503 U.S. at 7 (citing <u>Whitley</u>, 475 U.S. at 320-21).  Excessive force may amount to cruel and unusual punishment even when the inmate does not suffer serious injury.  <u>Hudson</u>, 503 U.S. at 9-10.  In deciding whether the use of force was wanton and unnecessary, courts consider factors such as the extent of any injury, the need for the use of force, and whether that need supports the amount of force used.  <u>Hudson</u>, 503 U.S. at 7.  We will also consider "any efforts made to temper the severity of a forceful response."  <u>Id.</u> (quoting <u>Whitley</u>, 475 U.S. at 321).

Plaintiff submitted a verified complaint and a declaration signed under penalty of perjury (dkt. no. 114 at 27) stating that defendant Ralls wrapped his arm around plaintiff's throat, slammed plaintiff to the ground by plaintiff's neck in a choke hold position, and began choking plaintiff by squeezing his throat.  (Dkt. No. 1 at 11.)  Plaintiff claims that there was no need for this use of force because at the time plaintiff was not a threat; plaintiff was sitting down,

14

1   handcuffed, and blinded by the effects of pepper spray.  (Dkt. No. 114 at 28.)  Defendant Ralls'

2   declaration confirms that plaintiff "appeared to be secured by other responding staff," when

3   defendant Ralls responded to the alarm.  (Dkt. No. 104 at 1-2.)  The video confirms that plaintiff

4   was sitting down and handcuffed prior to defendant Ralls' use of force.  Defendant Ralls claims

5   that other responding staff were instructing plaintiff to "Spit it out!"  (Dkt. No. 104 at 2.)

6           At this point, disputes of material fact exist.  Defendant Ralls states he "then

7   grabbed the plaintiff around his lower jaw area while instructing the plaintiff to 'Spit it out!'  The

8   plaintiff eventually spit out the object and [Ralls] released him immediately."  (Dkt. No. 104 at

9   2.)  However, defendant Ralls does not provide a statement concerning his role, if any, in taking

10   plaintiff back to the ground while plaintiff was handcuffed.

11          The video shows that after plaintiff was helped from the prone position to a

12   sitting-up position, a period of time passed.  Plaintiff was not resisting.  Then, rather suddenly, a

13   group of correctional officers gathered around plaintiff and returned him to the ground.  Because

14   a number of correctional officers are surrounding plaintiff, the court cannot clearly identify who

15   is using force on plaintiff, or whether the force applied was reasonable.  However, plaintiff

16   provided the statement of T. Lane, taken on April 30, 2007, which states:

17              [Ralls] was using physical holds to subdue [plaintiff] while he was
                in restraints.  [Ralls] began yelling "spit it out!  spit it out!" while
18              having his right arm wrapped around [plaintiff's] facial area.
                [Plaintiff] appeared to begin gagging and spit out an object that
19              appeared to be a piece of blue chewed up paper.  [Ralls]
                immediately released the [plaintiff].

20

21   (Dkt. No. 114 at 21.)  Lane's statement appears to support plaintiff's position that defendant

22   Ralls' use of force occurred after plaintiff was returned to the ground, and while plaintiff was

23   restrained by the handcuffs.  Further, plaintiff contends that he wasn't ordered to spit out the kite

24   until after defendant Ralls and other correctional officers returned him to the ground, after

25   plaintiff was secured with handcuffs.  (Dkt. No. 114 at 16.)  Also, plaintiff contends defendant

26   Ralls choked him until he couldn't breathe and started gagging.  (Dkt. No. 114 at 27.)

An inmate's violation of a prison rule does not provide carte blanche for use of force. Under Hudson, "it is proper to evaluate the need for the application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " Hudson, 503 U.S. at 7 (citation omitted). Here, there is evidence that defendant Ralls' use of force was arguably not reasonably necessary. The video shows plaintiff sitting on the ground, handcuffed, and not resisting prior to defendant Ralls' use of force. There was no risk to the officers' safety at this point. While defendant refers to the kite as "contraband," it is undisputed that plaintiff showed the kite to defendant Scruggs, such that defendants were aware it was a kite and not some other form of contraband, such as drugs. A reasonable jury could find that if there was no need for the application of force, the degree of force applied exceeded the amount of force permissible. McLaurin v. Prater, 30 F.3d 982, 984 (8th Cir.1994) (Eighth Amendment violation established when guard hit inmate accused of stealing cigarettes; inmate suffered pain but no permanent injury).

The undersigned finds that there are material questions of fact in dispute surrounding defendant Ralls' actions on June 30, 2007, including at what point plaintiff was ordered to spit out the kite, the need for the use of force, the amount of force defendant Ralls used, and the circumstances under which he used that force. Accordingly, the motion for summary judgment on plaintiff's excessive use of force claim against defendant Ralls should be denied.

Defendant Ralls also contends that he is entitled to rely on the doctrine of qualified immunity.

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a governmental officer is immune

from suit based on the doctrine of qualified immunity, the court considers two questions.  One is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  Saucier v. Katz, 533 U.S. 194, 201 (2001) (overruled on other grounds).  A negative answer ends the analysis, with qualified immunity protecting defendant from liability.  Id.  If a constitutional violation occurred, a court also inquires "whether the right was clearly established."  Id.  "If the law did not put the [defendant] on notice that [his] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."  Id. at 202.  The district court may decide the order of addressing these questions and answer only the second, in accordance with fairness and efficiency and in light of the circumstances of a particular case.  Pearson v. Callahan, 129 S. Ct. 808, 821-22 (2009).  In this case, the court finds no reason to dispense with the familiar Saucier analysis.

As noted above, there are disputed issues of material fact on the question of defendant Ralls' use of force against plaintiff.  As the Eighth Circuit has observed:

> By June of 1994, the law was well established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause.

Foulk v. Charrier, 262 F.3d 687, 702 (8th Cir. 2001).  In this case, it was similarly clearly established in 2007 that an unreasonable response to a perceived threat violated the Eighth Amendment.  See Hudson, 503 U.S. at 9; Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002).  Thus, defendant Ralls is not entitled to qualified immunity.

VII.  Defendant Ramirez

In his verified complaint, plaintiff alleges defendant Ramirez was a "participant in the incident that occurred at CSP-Sacramento facility."  (Dkt. No. 1 at 10.)  "Then, as plaintiff was being escorted [after the incident] . . . [,] defendant Ramirez started threatening [plaintiff] verbally that he was going to drop [plaintiff] . . . ."  (Dkt. No. 1 at 12.)  Plaintiff presented no additional evidence in his unverified opposition.

17

1    It is undisputed that defendant Ramirez used physical force on plaintiff.

2    However, plaintiff does not allege that defendant Ramirez used excessive force, and plaintiff

3    does not allege he was dropped or otherwise harmed by defendant Ramirez.  (Id.)

4         a.  Alleged Use of Force

5    Defendant Ramirez provides a declaration stating that after responding to an

6    alarm, he "grabbed [plaintiff] by his legs in an attempt to help Sergeant Ralls retrieve the

7    contraband that was in [plaintiff's] mouth.  [Ramirez] believed [plaintiff] was attempting to

8    escape from [defendant] Ralls."  (Dkt. No. 85-4 at 2.)  Plaintiff adduces no evidence

9    demonstrating that defendant Ramirez used excessive force, or used force for any purpose other

10   than to maintain or restore discipline.[10]  Thus, defendant Ramirez is entitled to summary

11   judgment.

12        b.  Alleged Verbal Threats

13   Plaintiff claims defendant Ramirez verbally threatened to drop plaintiff during the

14   subsequent escort from the yard.  However, an allegation of mere threats alone fails to state a

15   claim of cruel and unusual punishment under the Eighth Amendment.  Gaut v. Sunn, 810 F.2d

16   923, 925 (9th Cir. 1987); see Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (neither

17   verbal abuse nor the use of profanity violate the Eighth Amendment).  Thus, plaintiff's allegation

18   that defendant Ramirez verbally threatened plaintiff during the subsequent escort, without more,

19   is insufficient to demonstrate a violation of plaintiff's Eighth Amendment rights.  Accordingly,

20   defendant Ramirez is entitled to summary judgment.

21

22        [10]  In his unverified opposition, plaintiff claims defendant Ramirez used force to help
defendant Ralls choke plaintiff, and that plaintiff did not refuse any orders from defendant
Ramirez, or verbally threaten or make any moves toward defendant Ramirez, and that "the

23   officers' actions were for the very purpose of causing harm."  (Dkt. No. 88 at 3-4.)  However,
plaintiff provides no evidence to rebut defendant Ramirez' declaration that he believed plaintiff

24   was attempting to escape from defendant Ralls, and that defendant Ramirez grabbed plaintiff's
legs to help defendant Ralls retrieve the contraband in plaintiff's mouth.  Plaintiff provides no

25   evidence to support his theory that defendant Ramirez grabbed plaintiff's legs to help defendant
Ralls "choke" plaintiff.  The video is similarly unhelpful as to defendant Ramirez.  In any event,

26   the act of grabbing plaintiff's legs, without more, fails to constitute the use of excessive force.

VI.  Defendant McCarvel

Plaintiff claims that defendant McCarvel violated his rights under the Eighth Amendment by failing to intervene to protect plaintiff from the harm threatened by defendant Ralls.  Defendant McCarvel seeks summary judgment in his favor on this claim, arguing that defendant McCarvel did not engage in any physical act against plaintiff, and that plaintiff submits no evidence to establish that McCarvel failed to perform a legally required duty.

In order to prevail on his Eighth Amendment failure to protect claim, plaintiff must present evidence that he was faced with a substantial risk of serious harm from defendant Ralls, and that defendant McCarvel acted with deliberate indifference to that risk.  See Farmer, 511 U.S. at 834.  Deliberate indifference is proved by evidence that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.

Defendant McCarvel declares that (1) he responded to an alarm, (2) when he arrived at the scene, plaintiff was being handcuffed, (3) plaintiff was choking and gagging on an unknown object, and (4) plaintiff failed to comply with defendant Ramirez' order to spit out the kite.  (Dkt. No. 85-3 at 1-2.)  Thus, defendant McCarvel meets his initial burden of informing the court of the basis of the motion and providing a declaration which he believes demonstrates the absence of a genuine issue of material fact.  The burden then shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist.  See Matsushita, 475 U.S. at 586.  In attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits; and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

The only evidence submitted by plaintiff in support of this claim is his allegation in his verified complaint that defendant McCarvel was "responsible for buildings 5 - 8," and a

1  participant in the use of force incident.  (Dkt. No. 1 at 10.)  Plaintiff claims that defendant

2  McCarvel was "indifferent to the use of force."  (Dkt. No. 1 at 13.)

3           Thus, the evidence submitted by plaintiff is insufficient to create a triable issue of

4  material fact as to whether defendant McCarvel was deliberately indifferent to a substantial risk

5  of harm posed to plaintiff.  It is undisputed that defendant McCarvel did not see what started the

6  chain of events at issue here.  Defendant McCarvel responded to an alarm set off in response to

7  the incident.  Although it is undisputed that defendant McCarvel heard plaintiff choking and

8  gagging, plaintiff adduces no evidence demonstrating that McCarvel was aware that plaintiff was

9  choking as a result of defendant Ralls' arm on plaintiff's throat, rather than choking on the kite

10  which plaintiff placed in his own mouth after refusing to give it to defendant Scruggs.  Defendant

11  McCarvel provided a declaration stating he observed plaintiff gagging and choking on an

12  unknown object.  (Dkt. No. 85-3 at 2.)  Plaintiff presents no evidence in rebuttal.  Plaintiff

13  concedes he could not see defendant McCarvel because he was blinded by pepper spray, but

14  could hear defendant McCarvel speaking with Correctional Officer Hodge.  (Dkt. No. 88 at 4.)

15  Plaintiff adduces no evidence demonstrating that defendant McCarvel was involved in the

16  decision to use force after plaintiff was restrained in handcuffs, or that defendant McCarvel was

17  aware, taking plaintiff's allegations as true, that defendant Ralls was going to use a choke hold to

18  attempt to retrieve the kite from plaintiff's mouth.  Thus, plaintiff fails to produce evidence that

19  defendant McCarvel was aware of any inappropriate use of force, or of any excessive risk to

20  plaintiff's health and safety.[11]  Therefore, defendant McCarvel is entitled to summary judgment

21  with respect to plaintiff's claim that McCarvel failed to protect plaintiff from a known risk of

22  ////

23  ////

24

25       [11]  Here, the videotape offers no support for plaintiff's claim against defendant McCarvel
because despite the parties' description of what took place, the court is unable to determine
26  which correctional officer is defendant McCarvel.

1  harm.[12]

2  VII.  Conclusion

3          Accordingly, IT IS HEREBY ORDERED that the May 4, 2011 (dkt. no. 100) and

4  August 24, 2011 (dkt. no. 119) findings and recommendations are vacated; and

5          IT IS HEREBY RECOMMENDED that:

6          1.  Defendants' motions for summary judgment based on Heck be denied;

7          2.  The September 24, 2010 motion for summary judgment (dkt no. 85) be granted

8  as to defendants Scruggs, Ramirez and McCarvel; and

9          3.  Defendant Ralls' May 11, 2011 motion for summary judgment (dkt. no. 102)

10  be denied.

11          These findings and recommendations are submitted to the United States District

12  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

13  days after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

16  objections shall be filed and served within fourteen days after service of the objections.  The

17  parties are advised that failure to file objections within the specified time may waive the right to

18  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19  DATED:  March 7, 2012

20  _____

21  KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

22  guev1132.msj2

23      [12]  To the extent plaintiff argues defendant McCarvel is responsible based on a
    supervisorial role, plaintiff's claim is also unavailing.  It is undisputed that defendant McCarvel
24  responded to an alarm, and didn't arrive at the scene until plaintiff was already sitting down.
    (Dkt. No. 88 at 9.)  In his verified complaint, plaintiff states defendant Scruggs was the "primary
25  officer and responsible for [this] incident."  (Dkt. No. 1 at 10.)  In addition, plaintiff produces no
    evidence demonstrating that defendant McCarvel was a supervisor of the defendants, or that
26  McCarvel was "in charge" of the yard where the incident occurred.