IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AMILCAR GUEVARA,

       Plaintiff,                    No. 2:09-cv-1132 TLN KJN P

    vs.

A. RALLS, et al.,

       Defendants,             FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

      Plaintiff, a state prisoner proceeding without counsel, seeks relief pursuant to 42 U.S.C. § 1983. This case is proceeding on the verified original complaint, filed April 24, 2009. Plaintiff alleges that defendant Scruggs used excessive force against plaintiff; defendant Ramirez used force and verbally threatened plaintiff during an escort; defendant McCarvel, responsible for the housing unit, was indifferent to the use of force on plaintiff, and defendant Ralls used excessive force on plaintiff. On September 27, 2012, pursuant to Woods v. Carey, 684 F.3d 934, 935 (9th Cir. 2012), defendants Scruggs, Ramirez, and McCarvel renewed their motion for summary judgment.[1] As explained below, the court recommends that the motion be granted.

---

[1] Defendant Ralls did not renew his motion for summary judgment.

1

## II. Motion for Summary Judgment

Defendants move for summary judgment on the grounds that plaintiff's action is barred by Heck v. Humphrey, 512 U.S. 477 (1994), and Edwards v. Balisok, 520 U.S. 641 (1997). Defendant Scruggs also seeks summary judgment on the grounds that he acted in good faith to restore order and maintain discipline, and did not intend to cause plaintiff harm. Defendant Ramirez also moves for summary judgment on the ground that plaintiff does not allege that defendant Ramirez used excessive force, and only alleges defendant Ramirez verbally threatened plaintiff, which fail to state claims under the Eighth Amendment. Defendant McCarvel also seeks summary judgment on the ground that absent personal involvement in the alleged deprivation, McCarvel cannot be held liable.

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th

---

[2] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

1  Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory
2  committee's notes to 2010 amendments (recognizing that "a party who does not have the trial
3  burden of production may rely on a showing that a party who does have the trial burden cannot
4  produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment
5  should be entered, after adequate time for discovery and upon motion, against a party who fails to
6  make a showing sufficient to establish the existence of an element essential to that party's case,
7  and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.
8  "[A] complete failure of proof concerning an essential element of the nonmoving party's case
9  necessarily renders all other facts immaterial."  Id. at 323.
10         Consequently, if the moving party meets its initial responsibility, the burden then shifts to
11  the opposing party to establish that a genuine issue as to any material fact actually exists.  See
12  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to
13  establish the existence of such a factual dispute, the opposing party may not rely upon the
14  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the
15  form of affidavits, and/or admissible discovery material in support of its contention that such a
16  dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party
17  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
18  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
19  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
20  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
21  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
22  1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914
23  F.2d 1564, 1575 (9th Cir. 1990).
24         In the endeavor to establish the existence of a factual dispute, the opposing party need not
25  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
26  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on September 27, 2012, plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 137-7); see Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

B. Undisputed Facts

For purposes of the instant motion for summary judgment, the court finds the following facts undisputed.

1. Plaintiff was in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at the California State Prison-Sacramento ("CSP-SAC") on April 30, 2007.

     2.  Defendants Scruggs, Ramirez, and Ralls are correctional officers employed by the CDCR and were assigned to CSP-SAC on April 30, 2007.  Defendant McCarvel is a correctional sergeant employed by CDCR and was assigned to CSP-SAC on April 30, 2007.

     3.  On April 30, 2007, defendant Scruggs[3] was the Facility C, Housing Unit 4, Floor Officer working the Third Watch, which is from 2:00 p.m. to 10:00 p.m.  At approximately 5:40 p.m., defendant Scruggs was processing a group of inmates from Housing Unit 4 to attend an Alcoholics Anonymous ("AA") meeting outside of the building.  Processing includes conducting clothed body searches that allow staff to check for weapons and/or contraband.

     4.  Plaintiff was one of the inmates leaving the building to attend an AA meeting.  During the clothed body search of plaintiff, defendant Scruggs asked plaintiff what was in plaintiff's hand, and plaintiff replied that he had a cup of coffee and a "kite," or note.  Defendant Scruggs asked plaintiff to show him the kite, and plaintiff allowed defendant to see the kite in his hand.

     5.  Defendant Scruggs told plaintiff, "let me have it."  Plaintiff did not give the kite to defendant Scruggs, and told Scruggs, "You know I can't do that."  (ECF No. 143 at 21.)[4]  Plaintiff concedes that once he saw Scruggs get ready to use his pepper spray, plaintiff "decided to move away from" Officer Scruggs.  (ECF No. 143 at 21.)

     6.  What happened next is the subject of a CDCR Rules Violation Report regarding the use of force during the April 30, 2007 incident that followed.  Plaintiff was charged with "Resisting Staff Resulting in the Use of Force," Log No. C07-04-101.  Defendants Scruggs, Ramirez and McCarvel wrote reports describing what they observed during the incident, which

////

---

[3] Defendant Scruggs' "declaration" is not signed under penalty of perjury, and appears to be missing page two (the two pages of his "declaration" are numbered 1 and 3, the paragraph numbering jumps from 2 to 9, and no second page was provided).  Accordingly, only facts as to defendant Scruggs that are undisputed by plaintiff are included here.

[4] Plaintiff argues that he did not refuse a direct order and did not resist defendant Scruggs, but followed Scruggs' order to let him see what was in plaintiff's hands, even if plaintiff did not actually give defendant the kite.  (ECF No. 143 at 7.)

were included in the CDCR 837 Crime/Incident Report Log #SAC-FAC-07-04-0321, dated April 30, 2007.[5]

7. In his verified complaint, plaintiff states that he suffered a scratch/abrasion to his knee, "swollen soreness pain to throat," and had difficulty swallowing. (ECF No. 1 at 12.) The rules violation report reflects that plaintiff sustained a "reddened area on [his] face and chest area due to O.C. Pepper spray." (ECF No. 85-6 at 8.)

8. Plaintiff alleges that defendant Scruggs used excessive force during the use of force incident on April 30, 2007.[6]

---

[5] In pertinent part, the report states defendant Scruggs "grabbed [plaintiff] by the back of his shirt and ordered him to get down on the ground. [Plaintiff] attempted to break away from my grasp and turned back around towards me. [Scruggs] sprayed [plaintiff] in the upper body and face area with [his] MK9X Oleoresin Capsicum (OC) pepper spray. [Plaintiff] laid face down on the sidewalk in front of C4-Block. [Scruggs] released [his] grasp on [plaintiff's] shirt and activated [his] personal alarm." (ECF. No. 137-3 at 21.)

Defendant Ramirez wrote: "On 4/30/2007 at approximately 1740 hours, I responded to an alarm in front of Facility C Four (4) block. Upon my arrival, I assisted Officer R. McCleod in placing handcuffs on [plaintiff]. I observed Sergeant A. Ralls attempt to gain control of [plaintiff's] lower jaw. I immediately grabbed [plaintiff] by his legs to help Sergeant A. Ralls with retrieving the contraband as [plaintiff] appeared to be attempting to escape from Sergeant A. Ralls. [Plaintiff] then spit the contraband out of his mouth. Officer McCleod and I escorted him to C-Facility Pedestrian Sally-port Holding Cell Number Seven (7). . . . (ECF No. 137-4 at 5.)

Defendant McCarvel wrote, in pertinent part: Once [McCarvel] arrived at the incident location[,] [McCarvel] observed Correctional staff place [plaintiff] into handcuffs. It appeared [plaintiff] had been sprayed with Oleoresin Capsicum Pepper Spray. [McCarvel] heard [plaintiff] gagging, and choking on an unknown substance / object. Officer S. Ramirez shouted orders for [plaintiff] to spit the substance out of his mouth with negative results. Correctional Sergeant A. Ralls placed his right arm around [plaintiff's] upper chest and leaned him forward so the substance / object could easily fall out of his mouth. With the assistance of Sergeant Ralls, [plaintiff] was able to successfully spit a chewed up note out of his mouth allowing him to breathe clearly again. This concluded my involvement with this incident. (ECF No. 137-6 at 5.)

[6] Plaintiff contends defendant Scruggs threatened to use a weapon on plaintiff, causing plaintiff to move away. (ECF No. 1 at 11.) Scruggs then "yanked [plaintiff] from the back of [his] shirt causing [plaintiff] to bounce backwards." (Id.) Plaintiff avers Scruggs would not let go of plaintiff's shirt so that plaintiff could get in the prone position. Scruggs then, allegedly without provocation or threat from plaintiff, pepper-sprayed plaintiff on the face and body, which Scruggs allegedly continued to do, even after plaintiff assumed the prone position. (Id.) Plaintiff contends that Scruggs did not ask plaintiff to submit to handcuffs, and that Scruggs was aware there was no danger of weapons because Scruggs had patted down and searched plaintiff. (ECF No. 1 at 13.)

9. At some point during this use of force incident on April 30, 2007, defendant Ralls used force on plaintiff. Plaintiff alleges defendant Ralls' use of force was excessive.

10. At some point during this use of force incident on April 30, 2007, defendant Ramirez used force on plaintiff.

11. Plaintiff was found guilty of a Division D offense, Resisting Staff Resulting in the Use of Force for rules violation Log No. C07-04-101. Plaintiff was assessed a credit loss of 90 days. Plaintiff's time credits were subsequently restored under California Code of Regulations, Title 15, §§ 3327 & 3328, because plaintiff remained disciplinary-free.

III. Additional Evidence

On February 17, 2012, the district court directed defendants to provide a copy of the "video CD" of the April 30, 2007 use of force incident. On February 29, 2012, defendants lodged a copy of the video CD, which this court viewed in connection with the pending motions.

IV. Favorable Termination Rule

Defendants move for summary judgment on plaintiff's excessive use of force claims on the ground that the claims are Heck-barred. Defendants are correct that, generally speaking, a plaintiff may not bring a civil rights action pursuant to § 1983 arising out of alleged unconstitutional activities that resulted in his conviction unless the conviction has been set aside. See Heck v. Humphrey, 512 U.S. 477 (1994) (dismissing § 1983 action for damages based on "actions whose unlawfulness would render a conviction or sentence invalid" when the conviction or sentence has not yet been reversed, expunged, or otherwise invalidated). See also Edwards v. Balisok, 520 U.S. 641, 648 (1997) (dismissing § 1983 action for declaratory relief and monetary damages because successful challenge to procedures used in disciplinary hearing would necessarily imply the invalidity of the punishment imposed). Thus, defendants are correct that plaintiff cannot claim that he was not resisting defendant Scruggs, as plaintiff argues throughout his opposition, because such a position directly calls into question the prison disciplinary plaintiff was issued based on the April 30, 2007 incident.

However, a conviction for resisting a peace officer under California law does not necessarily preclude an excessive use of force claim pursuant § 1983. See Hooper v. County of San Diego, 629 F.3d 1127 (9th Cir. 2011) (Fourth Amendment excessive force claim not Heck-barred because "[a] holding in Hooper's § 1983 case that the use of the dog was excessive force would not "negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of [Hooper's] attempt to resist it [when she jerked her hand away from Deputy Terrell].""); Smith v. City of Hemet, 394 F.3d 689, 699 (9th Cir. 2005) ("[A] § 1983 action is not barred under Heck unless it is clear from the record that its successful prosecution would necessarily imply or demonstrate that the plaintiff's earlier conviction was invalid.").

California district courts have determined that Eighth Amendment claims under circumstances similar to those presented here are not Heck-barred. See Green v. Goldy, 2011 WL 2445872 (E.D. Cal. 2011) (prisoner's excessive force claim not Heck-barred because two factual predicates exist, one giving rise to the disciplinary conviction, and the other giving rise to a potential civil claim for excessive force); El-Shaddai v. Wheeler, 2011 WL 1332044, at *5 (E.D. Cal. Apr. 5, 2011) (finding that an Eighth Amendment excessive use of force claim is not Heck-barred because "a judgment for plaintiff on his Eighth Amendment claim would not necessarily imply the invalidity of his disciplinary conviction" for willfully resisting a peace officer); Gipbsin v. Kernan, 2011 WL 533701, at *5-*7 (E.D. Cal. Feb. 11, 2011) (finding that an Eighth Amendment excessive use of force claim is not Heck-barred because success on plaintiff's claim would not necessarily negate his disciplinary conviction for battery on a peace officer or his criminal conviction in state court for battery); Meadows v. Porter, 2009 WL 3233902, at *2 (E.D. Cal. Oct. 2, 2009) (finding that an Eighth Amendment excessive use of force claim is not Heck-barred because a finding that an officer "responded to the attempted battery with excessive force would not negate any of the elements of attempted battery. And although the two incidents are closely related and occurred one right after the other, they are separate and distinct events."); Candler v. Woodford, 2007 WL 3232435, at *8 (N.D. Cal. Nov.

1, 2007) (finding that an Eighth Amendment excessive use of force claim is not Heck-barred because "defendants have not shown that if plaintiff were to prevail on his excessive force claims the validity of the finding that he committed battery on a peace officer necessarily would be implicated").

Here, plaintiff was convicted of "Resisting Staff Resulting in the Use of Force" under § 3005(c) of the California Code of Regulations. Cal. Code of Regs., tit. 15, § 3005(c).[7]

In this case, plaintiff's success on his Eighth Amendment excessive use of force claim would not necessarily imply the invalidity of the disciplinary conviction under § 3005. For plaintiff to succeed on his excessive use of force claim, he must prove that defendants unnecessarily and wantonly inflicted pain on him during the use of force incident on April 30, 2007. Whitley v. Albers, 475 U.S. 312, 320 (1986). A number of factors will be relevant to determine whether defendants' use of force violated plaintiff's rights under the Eighth Amendment, including (1) the need for force, (2) the relationship between the need for force and the amount of force used, (3) the extent of the injury inflicted, (4) the extent of the threat the officers reasonably perceived the plaintiff posed to staff and inmates, and (5) any efforts to temper the severity of a forceful response. Id. at 321.

Under the evidence presented in connection with the summary judgment motion, a reasonable factfinder could conclude both that plaintiff's conduct on April 30, 2007 violated § 3005(c), and that defendants used excessive force in response to plaintiff's conduct. Such findings would not necessarily imply the invalidity of plaintiff's disciplinary conviction. Although plaintiff's conduct and these defendants' alleged excessive use of force arise out of the

---

[7] This subsection was re-lettered on December 28, 2007, and amended to provide:

> Inmates shall not willfully commit or assist another person in the commission of an assault or battery to any person or persons, nor attempt or threaten the use of force or violence upon another person.

Cal. Code of Regs., tit. 15 §3005(d)(1).

same incident, two separate factual predicates exist, the first giving rise to plaintiff's disciplinary conviction, and the second giving rise to defendants' potential civil liability. See Hooper, 629 F.3d at 1132 ("Though occurring in one continuous chain of events, two isolated factual contexts would exist, the first giving rise to criminal liability on the part of the criminal defendant, and the second giving rise to civil liability on the part of the arresting officer.") (quoting Yount v. City of Sacramento, 43 Cal.4th 885, 899 (2008)). Accordingly, the court concludes that plaintiff's excessive use of force claims against defendants are not Heck-barred.

V. Defendant Scruggs

Plaintiff claims that on April 30, 2007, defendant Scruggs was the primary officer, and responsible for the incident involving use of force. (ECF No. 1 at 10.) Plaintiff claims defendant Scruggs used excessive force when Scruggs grabbed plaintiff by the back of his shirt, causing plaintiff to bounce backwards, and preventing him from moving to the prone position. (ECF No. 1 at 11.) Plaintiff states that then, without provocation or threat from plaintiff, defendant Scruggs, pepper-sprayed plaintiff "on the face (body)," and continued to pepper-spray plaintiff even after plaintiff assumed the prone position. (ECF No. 1 at 12.) It is undisputed that plaintiff was found guilty of "Resisting Staff Resulting in the Use of Force." Plaintiff seeks damages for the alleged use of excessive force. (ECF No. 1 at 3.)

    A. Use of Force Standards

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the United States Constitution. Whitley, 475 U.S. at 319. Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Id.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992)

(citing Whitley, 475 U.S. at 320).  To prevail on an Eighth Amendment claim the plaintiff must show that objectively he suffered a "sufficiently serious" deprivation.  Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).  The plaintiff must also show that subjectively each defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur.  Farmer, 511 U.S. at 834.

It is well established that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley, i.e., whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson, 503 U.S. at 6-7.  A prisoner is not required to show a "significant injury" to establish that he suffered a sufficiently serious constitutional deprivation.  Id., 503 U.S. at 9-10.

Factors such as the need for the application of force, the relationship between the need and amount of force that was used, and the extent of injury inflicted are relevant to the ultimate determination as to whether force used by prison personnel was excessive.  From these factors, inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.  "Equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them, and any efforts made to temper the severity of a forceful response."  Whitley, 475 U.S. at 321.

Thus, there is no Eighth Amendment violation if "force was applied in a good-faith effort to maintain or restore discipline."  Hudson, 503 U.S. at 7.  Courts accord wide-ranging deference to prison administrators in the exercise of policies and practices that in their judgment are needed to preserve internal security, safety and discipline.  Whitley, 475 U.S. at 322-23.  The infliction of pain in the course of implementing prison security measures does not amount to cruel and unusual punishment even though it may appear, in hindsight, the degree of force was

unreasonable. Id. at 319. An allegation of cruel and unusual punishment should proceed to trial only if the evidence supports a reliable inference that the prison official intended to inflict pain. Id. at 322.

B. Analysis

Defendant Scruggs seeks summary judgment on the ground that he acted in good faith to restore order and maintain discipline, and that the evidence establishes defendant Scruggs did not intend to harm plaintiff during the use of force.

In plaintiff's verified complaint, plaintiff claims that defendant Scruggs threatened to use pepper spray on plaintiff, causing plaintiff to move away from Scruggs. (ECF No. 1 at 11.) Plaintiff alleges defendant Scruggs then yanked plaintiff from the back of his shirt, causing him to bounce backwards, and that the hold on plaintiff's shirt prevented plaintiff from getting in the prone position. Plaintiff avers that without provocation from him, defendant Scruggs then started to pepper spray plaintiff on the "face (body)" which he continued to use, even when [plaintiff] had assumed the prone position." (ECF No. 1 at 11.)

Although plaintiff contends that he followed defendant Scruggs' orders, and showed defendant Scruggs the kite in plaintiff's hand, plaintiff concedes that he did not give defendant Scruggs the kite. The video[8] shows plaintiff moving quickly away from defendant Scruggs. Defendant Scruggs pursued plaintiff, and in a matter of no more than six or seven seconds, plaintiff was prone on the ground. Moreover, within one second of plaintiff being prone on the ground, other officers arrived and defendant Scruggs walked away from plaintiff.

The undisputed facts indicate defendant Scruggs was reacting to a situation created by plaintiff, who admits he refused to turn over the kite upon defendant Scruggs' request, and moved away from defendant Scruggs. The video demonstrates that defendant Scruggs used pepper spray in an effort to stop plaintiff and restore order. While plaintiff could potentially

---

[8] The video CD is not accompanied by audio, it is strictly video.

12

1  question whether or not defendant Scruggs used more force than was necessary, or used more
2  pepper spray than was required, the video shows defendant Scruggs reacting in a matter of
3  seconds.  No reasonable juror viewing the video would find that defendant Scruggs acted
4  maliciously or sadistically to cause harm to plaintiff.  Plaintiff adduced no evidence
5  demonstrating defendant Scruggs acted with a culpable state of mind.

6  The evidence viewed in a light most favorable to plaintiff indicates that the force used
7  was reasonable and was not intended to harm plaintiff; rather, it was used to "preserve internal
8  order and discipline and to maintain institutional security."  Whitley, 475 U.S. at 322-23 (quoting
9  Bell v. Wolfish, 441 U.S. 520, 547 (1979).  There are no facts in evidence that defendant
10 Scruggs' actions could have caused extreme risk to plaintiff's health or safety, or that plaintiff
11 suffered a serious injury as a result of the use of force by defendant Scruggs.

12 Accordingly, the motion for summary judgment on plaintiff's excessive use of force
13 claim against defendants Scruggs should be granted.

VI.  Defendant Ramirez

15 In his verified complaint, plaintiff alleges defendant Ramirez was a "participant in the
16 incident that occurred at CSP-Sacramento facility."  (ECF No. 1 at 10.)  "Then, as plaintiff was
17 being escorted [after the incident] . . . [,] defendant Ramirez started threatening [plaintiff]
18 verbally that he was going to drop [plaintiff] . . . ."  (ECF No. 1 at 12.)

19 In his affidavit provided with his opposition, plaintiff declares that while he was lying
20 prone after defendant Scruggs' use of force, plaintiff heard defendant Ramirez instruct plaintiff to
21 put his hands behind his back.  Plaintiff complied, and defendant Ramirez handcuffed plaintiff.
22 Defendant Ramirez then instructed plaintiff to sit up with his legs straight.  (ECF No. 143 at 22-
23 23.)  Plaintiff included no further declarations as to defendant Ramirez.  (ECF No. 143, *passim*.)

24 Plaintiff presented no additional evidence in his unverified opposition.  In his unverified
25 opposition, plaintiff does not address defendant Ramirez holding plaintiff's legs.  Rather,
26 plaintiff claims that defendant Ramirez used force, then "threatened to drop me as he was

13

1  holding me by the arm for no other reason than because [plaintiff] grabbed [his] pants [to]
2  prevent[] them from falling down." (ECF No. 143 at 10.)
3       It is undisputed that defendant Ramirez used physical force on plaintiff while he held
4  plaintiff's legs down.  However, plaintiff does not allege that defendant Ramirez used excessive
5  force at any time, and plaintiff does not allege that he was dropped or otherwise harmed by
6  defendant Ramirez.
7       a.  Initial Alleged Use of Force
8       Defendant Ramirez provides a declaration stating that after responding to an alarm, he
9  "grabbed [plaintiff] by his legs in an attempt to help Sergeant Ralls retrieve the contraband that
10 was in [plaintiff's] mouth.  [Ramirez] believed [plaintiff] was attempting to escape from
11 [defendant] Ralls." (ECF No. 137-4 at 1-2.)  Defendant Ramirez denies that he threatened
12 plaintiff with harm during the subsequent escort. (ECF No. 137-4 at 2.)
13      Plaintiff adduces no evidence demonstrating that defendant Ramirez used excessive
14 force, or used force for any purpose other than to maintain or restore discipline when he held
15 plaintiff's legs.[9]  Indeed, plaintiff did not address this claim in either his affidavit or his
16 opposition to the instant motion.  Thus, defendant Ramirez is entitled to summary judgment on
17 this claim.
18 ////
19 ////

---

21  [9] In his first unverified opposition, plaintiff claimed defendant Ramirez used force to help defendant Ralls choke plaintiff, and that plaintiff did not refuse any orders from defendant Ramirez, or verbally threaten or make any moves toward defendant Ramirez, and that "the officers' actions were for the very purpose of causing harm." (ECF No. 88 at 3-4.)  However, plaintiff provided no evidence to rebut defendant Ramirez' declaration that he believed plaintiff was attempting to escape from defendant Ralls, and that defendant Ramirez grabbed plaintiff's legs to help defendant Ralls retrieve the contraband in plaintiff's mouth.  Plaintiff provided no evidence to support his theory that defendant Ramirez grabbed plaintiff's legs to help defendant Ralls "choke" plaintiff.  The video is similarly unhelpful as to plaintiff's claims concerning defendant Ramirez.  In any event, the act of grabbing plaintiff's legs, without more, fails to constitute the use of excessive force.

b. <u>Subsequent Alleged Use of Force</u>

In his verified complaint, plaintiff claims that defendant Ramirez verbally threatened to drop plaintiff during the subsequent escort from the yard. However, an allegation of mere threats alone fails to state a claim of cruel and unusual punishment under the Eighth Amendment. <u>Gaut v. Sunn</u>, 810 F.2d 923, 925 (9th Cir. 1987); <u>see</u> <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987) (neither verbal abuse nor the use of profanity violate the Eighth Amendment). Thus, plaintiff's allegation that defendant Ramirez verbally threatened plaintiff during the subsequent escort, without more, is insufficient to demonstrate a violation of plaintiff's Eighth Amendment rights.

In his unverified opposition, plaintiff now claims, for the first time, that defendant Ramirez was holding plaintiff by the arm when the verbal threats were made. (ECF No. 143 at 10.) As noted by defendants, plaintiff does not mention this claim in his affidavit or in his verified complaint. The cases plaintiff relies on are inapposite. (ECF No. 143 at 10.) First, this case is proceeding on defendant's motion for summary judgment, not on a motion to dismiss; therefore, plaintiff must do more than demonstrate he states a cognizable civil rights claim; rather, plaintiff must present evidence to rebut defendant Ramirez' declaration. Plaintiff presented no such evidence. Second, the cases are distinguishable on their facts. For example, in <u>Parker v. Asher</u>, 701 F.Supp. 192, 194 (D. Nev. 1988), the defendant allegedly pointed a taser gun at the prisoner. A taser poses a far greater danger than defendant Ramirez holding plaintiff's arm. Third, while plaintiff is correct that it was not necessary for defendant Ramirez to drop plaintiff on his face to maintain this lawsuit, even if plaintiff had presented evidence that defendant Ramirez held plaintiff's arm, plaintiff does not contend that the holding of plaintiff's arm was an excessive use of force, or that plaintiff was injured as a result. Thus, plaintiff's claim is unavailing. Accordingly, defendant Ramirez is entitled to summary judgment.

////

////

VII. Defendant McCarvel

Plaintiff claims that defendant McCarvel violated his rights under the Eighth Amendment by failing to intervene to protect plaintiff from the harm threatened by defendant Ralls. Defendant McCarvel seeks summary judgment in his favor on this claim, arguing that defendant McCarvel did not engage in any physical act against plaintiff, and that plaintiff submits no evidence to establish that McCarvel failed to perform a legally required duty.

In order to prevail on his Eighth Amendment failure to protect claim, plaintiff must present evidence that he was faced with a substantial risk of serious harm from defendant Ralls, and that defendant McCarvel acted with deliberate indifference to that risk. See Farmer, 511 U.S. at 834. Deliberate indifference is proved by evidence that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Defendant McCarvel declares that (1) he responded to an alarm, (2) when he arrived at the scene, plaintiff was being handcuffed, (3) plaintiff was choking and gagging on an unknown object, and (4) plaintiff failed to comply with defendant Ramirez' order to spit out the substance in his mouth. (ECF No. 137-6 at 1-2.) Defendant McCarvel also declares that:

> If an inmate is suspected of possessing contraband, the inmate will be asked to relinquish the object. If staff perceive a threat, they may use appropriate force to bring the inmate into compliance, as needed, to recover the contraband. After additional intervention by staff, [plaintiff] spit out what appeared to be a note, and was able to breathe clearly again.

(ECF No. 137-6 at 2.)

Thus, defendant McCarvel meets his initial burden of informing the court of the basis of the motion and providing a declaration which he believes demonstrates the absence of a genuine issue of material fact. The burden then shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita, 475 U.S. at 586. In attempting to establish

the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits; and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

Here, plaintiff relies solely on his allegations in his verified complaint that defendant McCarvel was "responsible for buildings 5 - 8," and a participant in the use of force incident, and that defendant McCarvel was "indifferent to the use of force."  (ECF No. 1 at 10, 13.)  Plaintiff included no statements about defendant McCarvel in plaintiff's affidavit in support of his opposition.  (ECF No. 143, *passim*.)

Thus, plaintiff failed to tender evidence to rebut defendant McCarvel's evidence. Plaintiff's verified allegations in the complaint are insufficient to create a triable issue of material fact as to whether defendant McCarvel was deliberately indifferent to a substantial risk of harm posed to plaintiff.  It is undisputed that defendant McCarvel did not see what started the chain of events at issue here.  Defendant McCarvel responded to an alarm set off in response to the incident.  Although it is undisputed that defendant McCarvel heard plaintiff choking and gagging, plaintiff adduces no evidence demonstrating that McCarvel was aware that plaintiff was choking as a result of defendant Ralls' arm on plaintiff's throat, rather than choking on the "unknown substance" in plaintiff's mouth.  Defendant McCarvel provided a declaration stating he observed plaintiff gagging and choking on an unknown object.  (ECF No. 137-6 at 2.) Plaintiff presents no evidence in rebuttal.  Plaintiff earlier conceded that he could not see defendant McCarvel because he was blinded by pepper spray, but could hear defendant McCarvel speaking with Correctional Officer Hodge.  (ECF No. 88 at 4.)  Plaintiff adduces no evidence demonstrating that defendant McCarvel was involved in the decision to use force after plaintiff was restrained in handcuffs, or that defendant McCarvel was aware, taking plaintiff's allegations as true, that defendant Ralls was going to use a choke hold to attempt to retrieve the unknown object from plaintiff's mouth, or that defendant Ralls used excessive force in attempting to

remove the item from plaintiff's mouth.  Thus, plaintiff fails to produce evidence that defendant McCarvel was aware of any inappropriate use of force, or of any excessive risk to plaintiff's health and safety.[10]  Therefore, defendant McCarvel is entitled to summary judgment with respect to plaintiff's claim that McCarvel failed to protect plaintiff from a known risk of harm.[11]

VIII. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment based on Heck be denied; and

2. The September 27, 2012 motion for summary judgment (ECF No. 137) be granted as to defendants Scruggs, Ramirez and McCarvel; and

3. This case be remanded to the undersigned for scheduling as to plaintiff's remaining claim against defendant Ralls.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The

////

////

---

[10] Here, the videotape offers no support for plaintiff's claim against defendant McCarvel because despite the parties' description of what took place, the court is unable to determine which correctional officer is defendant McCarvel.

[11] To the extent plaintiff argues defendant McCarvel is responsible based on a supervisorial role, plaintiff's claim is also unavailing.  It is undisputed that defendant McCarvel responded to an alarm, and didn't arrive at the scene until plaintiff was already sitting down. (ECF Nos. 88 at 9; 137-6 at 1.)  In his verified complaint, plaintiff states defendant Scruggs was the "primary officer and responsible for [this] incident."  (ECF No. 1 at 10.)  In addition, plaintiff produces no evidence demonstrating that defendant McCarvel was a supervisor of the defendants, or that McCarvel was "in charge" of the yard where the incident occurred.

1 parties are advised that failure to file objections within the specified time may waive the right to
2 appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3 DATED:  August 2, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

6 guev1132.msj3