IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AMILCAR GUEVARA,

     Plaintiff,               No. 2:09-cv-1132 TLN KJN P

     vs.

A. RALLS, et al.,

     Defendants,          FINDINGS AND RECOMMENDATIONS

_____/

I.  Introduction

     Plaintiff, a state prisoner proceeding without counsel, seeks relief pursuant to 42 U.S.C. § 1983.  This case is proceeding on the verified original complaint, filed April 24, 2009.  Plaintiff alleges that defendant Scruggs used excessive force against plaintiff; defendant Ramirez used force and verbally threatened plaintiff during an escort; defendant McCarvel, responsible for the housing unit, was indifferent to the use of force on plaintiff, and defendant Ralls used excessive force on plaintiff.  On September 27, 2012, pursuant to Woods v. Carey, 684 F.3d 934, 935 (9th Cir. 2012), defendants Scruggs, Ramirez, and McCarvel renewed their motion for summary judgment.[1]  As explained below, the court recommends that the motion be granted.

_____

    [1]  Defendant Ralls did not renew his motion for summary judgment.

1

1  II.  Motion for Summary Judgment

2       Defendants move for summary judgment on the grounds that plaintiff's action is barred

3  by Heck v. Humphrey, 512 U.S. 477 (1994), and Edwards v. Balisok, 520 U.S. 641 (1997).

4  Defendant Scruggs also seeks summary judgment on the grounds that he acted in good faith to

5  restore order and maintain discipline, and did not intend to cause plaintiff harm.  Defendant

6  Ramirez also moves for summary judgment on the ground that plaintiff does not allege that

7  defendant Ramirez used excessive force, and only alleges defendant Ramirez verbally threatened

8  plaintiff, which fail to state claims under the Eighth Amendment.  Defendant McCarvel also

9  seeks summary judgment on the ground that absent personal involvement in the alleged

10  deprivation, McCarvel cannot be held liable.

11       A.  Legal Standard for Summary Judgment

12       Summary judgment is appropriate when it is demonstrated that the standard set forth in

13  Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

14  movant shows that there is no genuine dispute as to any material fact and the movant is entitled

15  to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[2]

16            Under summary judgment practice, the moving party always bears
             the initial responsibility of informing the district court of the basis
17           for its motion, and identifying those portions of "the pleadings,
             depositions, answers to interrogatories, and admissions on file,
18           together with the affidavits, if any," which it believes demonstrate
             the absence of a genuine issue of material fact.

19

20  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).

21  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove

22  that there is an absence of evidence to support the non-moving party's case."  Nursing Home

23  Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th

24

25       [2]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10,
     2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule
26   56, "[t]he standard for granting summary judgment remains unchanged."

1  Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

2  committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

3  burden of production may rely on a showing that a party who does have the trial burden cannot

4  produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

5  should be entered, after adequate time for discovery and upon motion, against a party who fails to

6  make a showing sufficient to establish the existence of an element essential to that party's case,

7  and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

8  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

9  necessarily renders all other facts immaterial."  Id. at 323.

10        Consequently, if the moving party meets its initial responsibility, the burden then shifts to

11  the opposing party to establish that a genuine issue as to any material fact actually exists.  See

12  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

13  establish the existence of such a factual dispute, the opposing party may not rely upon the

14  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

15  form of affidavits, and/or admissible discovery material in support of its contention that such a

16  dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

17  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

18  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

19  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

20  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

21  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

22  1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914

23  F.2d 1564, 1575 (9th Cir. 1990).

24        In the endeavor to establish the existence of a factual dispute, the opposing party need not

25  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

26  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

1    trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

2    the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

3    Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

4    amendments).

5         In resolving a summary judgment motion, the court examines the pleadings, depositions,

6    answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

7    Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

8    255.  All reasonable inferences that may be drawn from the facts placed before the court must be

9    drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

10   are not drawn out of the air, and it is the opposing party's obligation to produce a factual

11   predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

12   Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

13   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

14   some metaphysical doubt as to the material facts. . . .  Where the record taken

15   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

16   'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

17        By contemporaneous notice provided on September 27, 2012, plaintiff was advised of the

18   requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil

19   Procedure.  (ECF No. 137-7); see Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

20   Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

21        B.  Undisputed Facts

22        For purposes of the instant motion for summary judgment, the court finds the following

23   facts undisputed.

24        1. Plaintiff was in the custody of the California Department of Corrections and

25   Rehabilitation ("CDCR") at the California State Prison-Sacramento ("CSP-SAC") on April 30,

26   2007.

1        2.  Defendants Scruggs, Ramirez, and Ralls are correctional officers employed by the

2   CDCR and were assigned to CSP-SAC on April 30, 2007.  Defendant McCarvel is a correctional

3   sergeant employed by CDCR and was assigned to CSP-SAC on April 30, 2007.

4        3.  On April 30, 2007, defendant Scruggs[3] was the Facility C, Housing Unit 4, Floor

5   Officer working the Third Watch, which is from 2:00 p.m. to 10:00 p.m.  At approximately 5:40

6   p.m., defendant Scruggs was processing a group of inmates from Housing Unit 4 to attend an

7   Alcoholics Anonymous ("AA") meeting outside of the building.  Processing includes conducting

8   clothed body searches that allow staff to check for weapons and/or contraband.

9        4.  Plaintiff was one of the inmates leaving the building to attend an AA meeting.  During

10  the clothed body search of plaintiff, defendant Scruggs asked plaintiff what was in plaintiff's

11  hand, and plaintiff replied that he had a cup of coffee and a "kite," or note.  Defendant Scruggs

12  asked plaintiff to show him the kite, and plaintiff allowed defendant to see the kite in his hand.

13       5.  Defendant Scruggs told plaintiff, "let me have it."  Plaintiff did not give the kite to

14  defendant Scruggs, and told Scruggs, "You know I can't do that."  (ECF No. 143 at 21.)[4]

15  Plaintiff concedes that once he saw Scruggs get ready to use his pepper spray, plaintiff "decided

16  to move away from" Officer Scruggs.  (ECF No. 143 at 21.)

17       6.  What happened next is the subject of a CDCR Rules Violation Report regarding the

18  use of force during the April 30, 2007 incident that followed.  Plaintiff was charged with

19  "Resisting Staff Resulting in the Use of Force," Log No. C07-04-101.  Defendants Scruggs,

20  Ramirez and McCarvel wrote reports describing what they observed during the incident, which

21  ////

---

[3] Defendant Scruggs' "declaration" is not signed under penalty of perjury, and appears to be missing page two (the two pages of his "declaration" are numbered 1 and 3, the paragraph numbering jumps from 2 to 9, and no second page was provided).  Accordingly, only facts as to defendant Scruggs that are undisputed by plaintiff are included here.

[4] Plaintiff argues that he did not refuse a direct order and did not resist defendant Scruggs, but followed Scruggs' order to let him see what was in plaintiff's hands, even if plaintiff did not actually give defendant the kite.  (ECF No. 143 at 7.)

1   were included in the CDCR 837 Crime/Incident Report Log #SAC-FAC-07-04-0321, dated April

2   30, 2007.[5]

3          7.  In his verified complaint, plaintiff states that he suffered a scratch/abrasion to his knee,

4   "swollen soreness pain to throat," and had difficulty swallowing.  (ECF No. 1 at 12.)  The rules

5   violation report reflects that plaintiff sustained a "reddened area on [his] face and chest area due

6   to O.C. Pepper spray."  (ECF No. 85-6 at 8.)

7          8.  Plaintiff alleges that defendant Scruggs used excessive force during the use of force

8   incident on April 30, 2007.[6]

9

10         [5]  In pertinent part, the report states defendant Scruggs "grabbed [plaintiff] by the back of
    his shirt and ordered him to get down on the ground.  [Plaintiff] attempted to break away from
11   my grasp and turned back around towards me.  [Scruggs] sprayed [plaintiff] in the upper body
    and face area with [his] MK9X Oleoresin Capsicum (OC) pepper spray.  [Plaintiff] laid face
12   down on the sidewalk in front of C4-Block.  [Scruggs] released [his] grasp on [plaintiff's] shirt
    and activated [his] personal alarm."  (ECF. No. 137-3 at 21.)

13         Defendant Ramirez wrote:  "On 4/30/2007 at approximately 1740 hours, I responded to
    an alarm in front of Facility C Four (4) block.  Upon my arrival, I assisted Officer R. McCleod in
14   placing handcuffs on [plaintiff].  I observed Sergeant A. Ralls attempt to gain control of
    [plaintiff's] lower jaw.  I immediately grabbed [plaintiff] by his legs to help Sergeant A. Ralls
15   with retrieving the contraband as [plaintiff] appeared to be attempting to escape from Sergeant A.
    Ralls.  [Plaintiff] then spit the contraband out of his mouth.  Officer McCleod and I escorted him
16   to C-Facility Pedestrian Sally-port Holding Cell Number Seven (7). . . .  (ECF No. 137-4 at 5.)

17         Defendant McCarvel wrote, in pertinent part:  Once [McCarvel] arrived at the incident
    location[,] [McCarvel] observed Correctional staff place [plaintiff] into handcuffs.  It appeared
18   [plaintiff] had been sprayed with Oleoresin Capsicum Pepper Spray.  [McCarvel] heard
    [plaintiff] gagging, and choking on an unknown substance / object.  Officer S. Ramirez shouted
19   orders for [plaintiff] to spit the substance out of his mouth with negative results.  Correctional
    Sergeant A. Ralls placed his right arm around [plaintiff's] upper chest and leaned him forward so
20   the substance / object could easily fall out of his mouth.  With the assistance of Sergeant Ralls,
    [plaintiff] was able to successfully spit a chewed up note out of his mouth allowing him to
21   breathe clearly again.  This concluded my involvement with this incident.  (ECF No. 137-6 at 5.)

22         [6]  Plaintiff contends defendant Scruggs threatened to use a weapon on plaintiff, causing
    plaintiff to move away.  (ECF No. 1 at 11.)  Scruggs then "yanked [plaintiff] from the back of
23   [his] shirt causing [plaintiff] to bounce backwards."  (Id.)  Plaintiff avers Scruggs would not let
    go of plaintiff's shirt so that plaintiff could get in the prone position.  Scruggs then, allegedly
24   without provocation or threat from plaintiff, pepper-sprayed plaintiff on the face and body, which
    Scruggs allegedly continued to do, even after plaintiff assumed the prone position.  (Id.)  Plaintiff
25   contends that Scruggs did not ask plaintiff to submit to handcuffs, and that Scruggs was aware
    there was no danger of weapons because Scruggs had patted down and searched plaintiff.  (ECF
26   No. 1 at 13.)

9.   At some point during this use of force incident on April 30, 2007, defendant Ralls used force on plaintiff.  Plaintiff alleges defendant Ralls' use of force was excessive.

10.   At some point during this use of force incident on April 30, 2007, defendant Ramirez used force on plaintiff.

11.   Plaintiff was found guilty of a Division D offense, Resisting Staff Resulting in the Use of Force for rules violation Log No. C07-04-101.  Plaintiff was assessed a credit loss of 90 days.  Plaintiff's time credits were subsequently restored under California Code of Regulations, Title 15, §§ 3327 & 3328, because plaintiff remained disciplinary-free.

III.   Additional Evidence

On February 17, 2012, the district court directed defendants to provide a copy of the "video CD" of the April 30, 2007 use of force incident.  On February 29, 2012, defendants lodged a copy of the video CD, which this court viewed in connection with the pending motions.

IV.   Favorable Termination Rule

Defendants move for summary judgment on plaintiff's excessive use of force claims on the ground that the claims are Heck-barred.  Defendants are correct that, generally speaking, a plaintiff may not bring a civil rights action pursuant to § 1983 arising out of alleged unconstitutional activities that resulted in his conviction unless the conviction has been set aside. See Heck v. Humphrey, 512 U.S. 477 (1994) (dismissing § 1983 action for damages based on "actions whose unlawfulness would render a conviction or sentence invalid" when the conviction or sentence has not yet been reversed, expunged, or otherwise invalidated).  See also Edwards v. Balisok, 520 U.S. 641, 648 (1997) (dismissing § 1983 action for declaratory relief and monetary damages because successful challenge to procedures used in disciplinary hearing would necessarily imply the invalidity of the punishment imposed).  Thus, defendants are correct that plaintiff cannot claim that he was not resisting defendant Scruggs, as plaintiff argues throughout his opposition, because such a position directly calls into question the prison disciplinary plaintiff was issued based on the April 30, 2007 incident.

1    However, a conviction for resisting a peace officer under California law does not

2  necessarily preclude an excessive use of force claim pursuant § 1983.  See Hooper v. County of

3  San Diego, 629 F.3d 1127 (9th Cir. 2011) (Fourth Amendment excessive force claim not Heck-

4  barred because "[a] holding in Hooper's § 1983 case that the use of the dog was excessive force

5  would not "negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of

6  [Hooper's] attempt to resist it [when she jerked her hand away from Deputy Terrell].");  Smith v.

7  City of Hemet, 394 F.3d 689, 699 (9th Cir. 2005) ("[A] § 1983 action is not barred under Heck

8  unless it is clear from the record that its successful prosecution would necessarily imply or

9  demonstrate that the plaintiff's earlier conviction was invalid.").

10    California district courts have determined that Eighth Amendment claims under

11  circumstances similar to those presented here are not Heck-barred.  See Green v. Goldy, 2011

12  WL 2445872 (E.D. Cal. 2011) (prisoner's excessive force claim not Heck-barred because two

13  factual predicates exist, one giving rise to the disciplinary conviction, and the other giving rise to

14  a potential civil claim for excessive force); El -Shaddai v. Wheeler, 2011 WL 1332044, at *5

15  (E.D. Cal. Apr. 5, 2011) (finding that an Eighth Amendment excessive use of force claim is not

16  Heck-barred because "a judgment for plaintiff on his Eighth Amendment claim would not

17  necessarily imply the invalidity of his disciplinary conviction" for willfully resisting a peace

18  officer); Gipbsin v. Kernan, 2011 WL 533701, at *5-*7 (E.D. Cal. Feb. 11, 2011) (finding that an

19  Eighth Amendment excessive use of force claim is not Heck-barred because success on

20  plaintiff's claim would not necessarily negate his disciplinary conviction for battery on a peace

21  officer or his criminal conviction in state court for battery); Meadows v. Porter, 2009 WL

22  3233902, at *2 (E.D. Cal. Oct. 2, 2009) (finding that an Eighth Amendment excessive use of

23  force claim is not Heck-barred because a finding that an officer "responded to the attempted

24  battery with excessive force would not negate any of the elements of attempted battery.  And

25  although the two incidents are closely related and occurred one right after the other, they are

26  separate and distinct events."); Candler v. Woodford, 2007 WL 3232435, at *8 (N.D. Cal. Nov.

1, 2007) (finding that an Eighth Amendment excessive use of force claim is not Heck-barred because "defendants have not shown that if plaintiff were to prevail on his excessive force claims the validity of the finding that he committed battery on a peace officer necessarily would be implicated").

Here, plaintiff was convicted of "Resisting Staff Resulting in the Use of Force" under § 3005(c) of the California Code of Regulations.  Cal. Code of Regs., tit. 15, § 3005(c).[7]

In this case, plaintiff's success on his Eighth Amendment excessive use of force claim would not necessarily imply the invalidity of the disciplinary conviction under § 3005.  For plaintiff to succeed on his excessive use of force claim, he must prove that defendants unnecessarily and wantonly inflicted pain on him during the use of force incident on April 30, 2007.  Whitley v. Albers, 475 U.S. 312, 320 (1986).  A number of factors will be relevant to determine whether defendants' use of force violated plaintiff's rights under the Eighth Amendment, including (1) the need for force, (2) the relationship between the need for force and the amount of force used, (3) the extent of the injury inflicted, (4) the extent of the threat the officers reasonably perceived the plaintiff posed to staff and inmates, and (5) any efforts to temper the severity of a forceful response.  Id. at 321.

Under the evidence presented in connection with the summary judgment motion, a reasonable factfinder could conclude both that plaintiff's conduct on April 30, 2007 violated § 3005(c), and that defendants used excessive force in response to plaintiff's conduct.  Such findings would not necessarily imply the invalidity of plaintiff's disciplinary conviction.  Although plaintiff's conduct and these defendants' alleged excessive use of force arise out of the

---

[7]  This subsection was re-lettered on December 28, 2007, and amended to provide:

> Inmates shall not willfully commit or assist another person in the commission of an assault or battery to any person or persons, nor attempt or threaten the use of force or violence upon another person.

Cal. Code of Regs., tit. 15 §3005(d)(1).

1  same incident, two separate factual predicates exist, the first giving rise to plaintiff's disciplinary

2  conviction, and the second giving rise to defendants' potential civil liability.  See Hooper, 629

3  F.3d at 1132  ("Though occurring in one continuous chain of events, two isolated factual

4  contexts would exist, the first giving rise to criminal liability on the part of the criminal

5  defendant, and the second giving rise to civil liability on the part of the arresting officer.")

6  (quoting Yount v. City of Sacramento, 43 Cal.4th 885, 899 (2008)).  Accordingly, the court

7  concludes that plaintiff's excessive use of force claims against defendants are not Heck-barred.

8  V.  Defendant Scruggs

9        Plaintiff claims that on April 30, 2007, defendant Scruggs was the primary officer, and

10  responsible for the incident involving use of force.  (ECF No. 1 at 10.)  Plaintiff claims defendant

11  Scruggs used excessive force when Scruggs grabbed plaintiff by the back of his shirt, causing

12  plaintiff to bounce backwards, and preventing him from moving to the prone position.  (ECF No.

13  1 at 11.)  Plaintiff states that then, without provocation or threat from plaintiff, defendant

14  Scruggs, pepper-sprayed plaintiff "on the face (body)," and continued to pepper-spray plaintiff

15  even after plaintiff assumed the prone position.  (ECF No. 1 at 12.)  It is undisputed that plaintiff

16  was found guilty of "Resisting Staff Resulting in the Use of Force."  Plaintiff seeks damages for

17  the alleged use of excessive force.  (ECF No. 1 at 3.)

18        A.  Use of Force Standards

19        The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S.

20  Const. amend. VIII.  The "unnecessary and wanton infliction of pain" constitutes cruel and

21  unusual punishment prohibited by the United States Constitution.  Whitley, 475 U.S. at 319.

22  Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy

23  and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited

24  by the Cruel and Unusual Punishments Clause."  Id.

25        What is needed to show unnecessary and wanton infliction of pain "varies according to

26  the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 5 (1992)

10

1   (citing Whitley, 475 U.S. at 320).  To prevail on an Eighth Amendment claim the plaintiff must

2   show that objectively he suffered a "sufficiently serious" deprivation.  Farmer v. Brennan, 511

3   U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).  The plaintiff must also

4   show that subjectively each defendant had a culpable state of mind in allowing or causing the

5   plaintiff's deprivation to occur.  Farmer, 511 U.S. at 834.

6        It is well established that "whenever prison officials stand accused of using excessive

7   physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial

8   inquiry is that set out in Whitley, i.e., whether force was applied in a good-faith effort to maintain

9   or restore discipline, or maliciously and sadistically to cause harm."  Hudson, 503 U.S. at 6-7.  A

10  prisoner is not required to show a "significant injury" to establish that he suffered a sufficiently

11  serious constitutional deprivation.  Id., 503 U.S. at 9-10.

12       Factors such as the need for the application of force, the relationship between the need

13  and amount of force that was used, and the extent of injury inflicted are relevant to the ultimate

14  determination as to whether force used by prison personnel was excessive.  From these factors,

15  inferences may be drawn as to whether the use of force could plausibly have been thought

16  necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm

17  as is tantamount to a knowing willingness that it occur.  "Equally relevant are such factors as the

18  extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible

19  officials on the basis of facts known to them, and any efforts made to temper the severity of a

20  forceful response."  Whitley, 475 U.S. at 321.

21       Thus, there is no Eighth Amendment violation if "force was applied in a good-faith effort

22  to maintain or restore discipline."  Hudson, 503 U.S. at 7.  Courts accord wide-ranging deference

23  to prison administrators in the exercise of policies and practices that in their judgment are needed

24  to preserve internal security, safety and discipline.  Whitley, 475 U.S. at 322-23.  The infliction

25  of pain in the course of implementing prison security measures does not amount to cruel and

26  unusual punishment even though it may appear, in hindsight, the degree of force was

1  unreasonable.  Id. at 319.  An allegation of cruel and unusual punishment should proceed to trial

2  only if the evidence supports a reliable inference that the prison official intended to inflict pain.

3  Id. at 322.

4        B.  Analysis

5        Defendant Scruggs seeks summary judgment on the ground that he acted in good faith to

6  restore order and maintain discipline, and that the evidence establishes defendant Scruggs did not

7  intend to harm plaintiff during the use of force.

8        In plaintiff's verified complaint, plaintiff claims that defendant Scruggs threatened to use

9  pepper spray on plaintiff, causing plaintiff to move away from Scruggs.  (ECF No. 1 at 11.)

10  Plaintiff alleges defendant Scruggs then yanked plaintiff from the back of his shirt, causing him

11  to bounce backwards, and that the hold on plaintiff's shirt prevented plaintiff from getting in the

12  prone position.  Plaintiff avers that without provocation from him, defendant Scruggs then started

13  to pepper spray plaintiff on the "face (body)" which he continued to use, even when [plaintiff]

14  had assumed the prone position."  (ECF No. 1 at 11.)

15        Although plaintiff contends that he followed defendant Scruggs' orders, and showed

16  defendant Scruggs the kite in plaintiff's hand, plaintiff concedes that he did not give defendant

17  Scruggs the kite.  The video[8] shows plaintiff moving quickly away from defendant Scruggs.

18  Defendant Scruggs pursued plaintiff, and in a matter of no more than six or seven seconds,

19  plaintiff was prone on the ground.  Moreover, within one second of plaintiff being prone on the

20  ground, other officers arrived and defendant Scruggs walked away from plaintiff.

21        The undisputed facts indicate defendant Scruggs was reacting to a situation created by

22  plaintiff, who admits he refused to turn over the kite upon defendant Scruggs' request, and

23  moved away from defendant Scruggs.  The video demonstrates that defendant Scruggs used

24  pepper spray in an effort to stop plaintiff and restore order.  While plaintiff could potentially

25

26        [8] The video CD is not accompanied by audio, it is strictly video.

1   question whether or not defendant Scruggs used more force than was necessary, or used more

2   pepper spray than was required, the video shows defendant Scruggs reacting in a matter of

3   seconds.  No reasonable juror viewing the video would find that defendant Scruggs acted

4   maliciously or sadistically to cause harm to plaintiff.  Plaintiff adduced no evidence

5   demonstrating defendant Scruggs acted with a culpable state of mind.

6          The evidence viewed in a light most favorable to plaintiff indicates that the force used

7   was reasonable and was not intended to harm plaintiff; rather, it was used to "preserve internal

8   order and discipline and to maintain institutional security."  Whitley, 475 U.S. at 322-23 (quoting

9   Bell v. Wolfish, 441 U.S. 520, 547 (1979).  There are no facts in evidence that defendant

10  Scruggs' actions could have caused extreme risk to plaintiff's health or safety, or that plaintiff

11  suffered a serious injury as a result of the use of force by defendant Scruggs.

12         Accordingly, the motion for summary judgment on plaintiff's excessive use of force

13  claim against defendants Scruggs should be granted.

14  VI.  Defendant Ramirez

15         In his verified complaint, plaintiff alleges defendant Ramirez was a "participant in the

16  incident that occurred at CSP-Sacramento facility."  (ECF No. 1 at 10.)  "Then, as plaintiff was

17  being escorted [after the incident] . . . [,] defendant Ramirez started threatening [plaintiff]

18  verbally that he was going to drop [plaintiff] . . . ."  (ECF No. 1 at 12.)

19         In his affidavit provided with his opposition, plaintiff declares that while he was lying

20  prone after defendant Scruggs' use of force, plaintiff heard defendant Ramirez instruct plaintiff to

21  put his hands behind his back.  Plaintiff complied, and defendant Ramirez handcuffed plaintiff.

22  Defendant Ramirez then instructed plaintiff to sit up with his legs straight.  (ECF No. 143 at 22-

23  23.)  Plaintiff included no further declarations as to defendant Ramirez.  (ECF No. 143, *passim*.)

24         Plaintiff presented no additional evidence in his unverified opposition.  In his unverified

25  opposition, plaintiff does not address defendant Ramirez holding plaintiff's legs.  Rather,

26  plaintiff claims that defendant Ramirez used force, then "threatened to drop me as he was

1  holding me by the arm for no other reason than because [plaintiff] grabbed [his] pants [to]

2  prevent[] them from falling down."  (ECF No. 143 at 10.)

3      It is undisputed that defendant Ramirez used physical force on plaintiff while he held

4  plaintiff's legs down.  However, plaintiff does not allege that defendant Ramirez used excessive

5  force at any time, and plaintiff does not allege that he was dropped or otherwise harmed by

6  defendant Ramirez.

7      a.  Initial Alleged Use of Force

8      Defendant Ramirez provides a declaration stating that after responding to an alarm, he

9  "grabbed [plaintiff] by his legs in an attempt to help Sergeant Ralls retrieve the contraband that

10 was in [plaintiff's] mouth.  [Ramirez] believed [plaintiff] was attempting to escape from

11 [defendant] Ralls."  (ECF No. 137-4 at 1-2.)  Defendant Ramirez denies that he threatened

12 plaintiff with harm during the subsequent escort.  (ECF No. 137-4 at 2.)

13     Plaintiff adduces no evidence demonstrating that defendant Ramirez used excessive

14 force, or used force for any purpose other than to maintain or restore discipline when he held

15 plaintiff's legs.[9]  Indeed, plaintiff did not address this claim in either his affidavit or his

16 opposition to the instant motion.  Thus, defendant Ramirez is entitled to summary judgment on

17 this claim.

18 ////

19 ////

20

21     [9]  In his first unverified opposition, plaintiff claimed defendant Ramirez used force to
   help defendant Ralls choke plaintiff, and that plaintiff did not refuse any orders from defendant
22 Ramirez, or verbally threaten or make any moves toward defendant Ramirez, and that "the
   officers' actions were for the very purpose of causing harm."  (ECF No. 88 at 3-4.)  However,
23 plaintiff provided no evidence to rebut defendant Ramirez' declaration that he believed plaintiff
   was attempting to escape from defendant Ralls, and that defendant Ramirez grabbed plaintiff's
24 legs to help defendant Ralls retrieve the contraband in plaintiff's mouth.  Plaintiff provided no
   evidence to support his theory that defendant Ramirez grabbed plaintiff's legs to help defendant
25 Ralls "choke" plaintiff.  The video is similarly unhelpful as to plaintiff's claims concerning
   defendant Ramirez.  In any event, the act of grabbing plaintiff's legs, without more, fails to
26 constitute the use of excessive force.

1              b.  Subsequent Alleged Use of Force

2          In his verified complaint, plaintiff claims that defendant Ramirez verbally threatened to

3    drop plaintiff during the subsequent escort from the yard.  However, an allegation of mere threats

4    alone fails to state a claim of cruel and unusual punishment under the Eighth Amendment.  Gaut

5    v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987); see Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th

6    Cir. 1987) (neither verbal abuse nor the use of profanity violate the Eighth Amendment).  Thus,

7    plaintiff's allegation that defendant Ramirez verbally threatened plaintiff during the subsequent

8    escort, without more, is insufficient to demonstrate a violation of plaintiff's Eighth Amendment

9    rights.

10         In his unverified opposition, plaintiff now claims, for the first time, that defendant

11   Ramirez was holding plaintiff by the arm when the verbal threats were made.  (ECF No. 143 at

12   10.)  As noted by defendants, plaintiff does not mention this claim in his affidavit or in his

13   verified complaint.  The cases plaintiff relies on are inapposite.  (ECF No. 143 at 10.)  First, this

14   case is proceeding on defendant's motion for summary judgment, not on a motion to dismiss;

15   therefore, plaintiff must do more than demonstrate he states a cognizable civil rights claim;

16   rather, plaintiff must present evidence to rebut defendant Ramirez' declaration.  Plaintiff

17   presented no such evidence.  Second, the cases are distinguishable on their facts.  For example, in

18   Parker v. Asher, 701 F.Supp. 192, 194 (D. Nev. 1988), the defendant allegedly pointed a taser

19   gun at the prisoner.  A taser poses a far greater danger than defendant Ramirez holding plaintiff's

20   arm.  Third, while plaintiff is correct that it was not necessary for defendant Ramirez to drop

21   plaintiff on his face to maintain this lawsuit, even if plaintiff had presented evidence that

22   defendant Ramirez held plaintiff's arm, plaintiff does not contend that the holding of plaintiff's

23   arm was an excessive use of force, or that plaintiff was injured as a result.  Thus, plaintiff's claim

24   is unavailing.  Accordingly, defendant Ramirez is entitled to summary judgment.

25   ////

26   ////

1   VII.   Defendant McCarvel

2       Plaintiff claims that defendant McCarvel violated his rights under the Eighth Amendment

3   by failing to intervene to protect plaintiff from the harm threatened by defendant Ralls.

4   Defendant McCarvel seeks summary judgment in his favor on this claim, arguing that defendant

5   McCarvel did not engage in any physical act against plaintiff, and that plaintiff submits no

6   evidence to establish that McCarvel failed to perform a legally required duty.

7       In order to prevail on his Eighth Amendment failure to protect claim, plaintiff must

8   present evidence that he was faced with a substantial risk of serious harm from defendant Ralls,

9   and that defendant McCarvel acted with deliberate indifference to that risk.  See Farmer, 511

10   U.S. at 834.  Deliberate indifference is proved by evidence that a prison official "knows of and

11   disregards an excessive risk to inmate health or safety; the official must both be aware of the

12   facts from which the inference could be drawn that a substantial risk of serious harm exists, and

13   he must also draw the inference."  Farmer, 511 U.S. at 837.

14       Defendant McCarvel declares that (1) he responded to an alarm, (2) when he arrived at

15   the scene, plaintiff was being handcuffed, (3) plaintiff was choking and gagging on an unknown

16   object, and (4) plaintiff failed to comply with defendant Ramirez' order to spit out the substance

17   in his mouth.  (ECF No. 137-6 at 1-2.)  Defendant McCarvel also declares that:

18           If an inmate is suspected of possessing contraband, the inmate will
            be asked to relinquish the object.  If staff perceive a threat, they
19           may use appropriate force to bring the inmate into compliance, as
            needed, to recover the contraband.  After additional intervention by
20           staff, [plaintiff] spit out what appeared to be a note, and was able to
            breathe clearly again.

21

22   (ECF No. 137-6 at 2.)

23       Thus, defendant McCarvel meets his initial burden of informing the court of the basis of

24   the motion and providing a declaration which he believes demonstrates the absence of a genuine

25   issue of material fact.  The burden then shifts to plaintiff to establish that a genuine issue as to

26   any material fact actually does exist.  See Matsushita, 475 U.S. at 586.  In attempting to establish

1   the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of

2   his pleadings, but is required to tender evidence of specific facts in the form of affidavits; and/or

3   admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P.

4   56(e); Matsushita, 475 U.S. at 586 n.11.

5          Here, plaintiff relies solely on his allegations in his verified complaint that defendant

6   McCarvel was "responsible for buildings 5 - 8," and a participant in the use of force incident, and

7   that defendant McCarvel was "indifferent to the use of force."  (ECF No. 1 at 10, 13.)  Plaintiff

8   included no statements about defendant McCarvel in plaintiff's affidavit in support of his

9   opposition.  (ECF No. 143, *passim*.)

10         Thus, plaintiff failed to tender evidence to rebut defendant McCarvel's evidence.

11  Plaintiff's verified allegations in the complaint are insufficient to create a triable issue of material

12  fact as to whether defendant McCarvel was deliberately indifferent to a substantial risk of harm

13  posed to plaintiff.  It is undisputed that defendant McCarvel did not see what started the chain of

14  events at issue here.  Defendant McCarvel responded to an alarm set off in response to the

15  incident.  Although it is undisputed that defendant McCarvel heard plaintiff choking and

16  gagging, plaintiff adduces no evidence demonstrating that McCarvel was aware that plaintiff was

17  choking as a result of defendant Ralls' arm on plaintiff's throat, rather than choking on the

18  "unknown substance" in plaintiff's mouth.  Defendant McCarvel provided a declaration stating

19  he observed plaintiff gagging and choking on an unknown object.  (ECF No. 137-6 at 2.)

20  Plaintiff presents no evidence in rebuttal.  Plaintiff earlier conceded that he could not see

21  defendant McCarvel because he was blinded by pepper spray, but could hear defendant McCarvel

22  speaking with Correctional Officer Hodge.  (ECF No. 88 at 4.)  Plaintiff adduces no evidence

23  demonstrating that defendant McCarvel was involved in the decision to use force after plaintiff

24  was restrained in handcuffs, or that defendant McCarvel was aware, taking plaintiff's allegations

25  as true, that defendant Ralls was going to use a choke hold to attempt to retrieve the unknown

26  object from plaintiff's mouth, or that defendant Ralls used excessive force in attempting to

17

1    remove the item from plaintiff's mouth.  Thus, plaintiff fails to produce evidence that defendant

2    McCarvel was aware of any inappropriate use of force, or of any excessive risk to plaintiff's

3    health and safety.[10]  Therefore, defendant McCarvel is entitled to summary judgment with respect

4    to plaintiff's claim that McCarvel failed to protect plaintiff from a known risk of harm.[11]

5    VIII.  Conclusion

6           Accordingly, IT IS HEREBY RECOMMENDED that:

7           1.  Defendants' motion for summary judgment based on Heck be denied; and

8           2.  The September 27, 2012 motion for summary judgment (ECF No. 137) be granted as

9    to defendants Scruggs, Ramirez and McCarvel; and

10          3.  This case be remanded to the undersigned for scheduling as to plaintiff's remaining

11   claim against defendant Ralls.

12          These findings and recommendations are submitted to the United States District Judge

13   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

14   after being served with these findings and recommendations, any party may file written

15   objections with the court and serve a copy on all parties.  Such a document should be captioned

16   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

17   objections shall be filed and served within fourteen days after service of the objections.  The

18   ////

19   ////

20

21          [10]  Here, the videotape offers no support for plaintiff's claim against defendant McCarvel
     because despite the parties' description of what took place, the court is unable to determine
22   which correctional officer is defendant McCarvel.

23          [11]  To the extent plaintiff argues defendant McCarvel is responsible based on a
     supervisorial role, plaintiff's claim is also unavailing.  It is undisputed that defendant McCarvel
24   responded to an alarm, and didn't arrive at the scene until plaintiff was already sitting down.
     (ECF Nos. 88 at 9; 137-6 at 1.)  In his verified complaint, plaintiff states defendant Scruggs was
25   the "primary officer and responsible for [this] incident."  (ECF No. 1 at 10.)  In addition, plaintiff
     produces no evidence demonstrating that defendant McCarvel was a supervisor of the
26   defendants, or that McCarvel was "in charge" of the yard where the incident occurred.

1 | parties are advised that failure to file objections within the specified time may waive the right to

2 | appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3 | DATED:  August 2, 2013

4 | _____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

5 |

6 | guev1132.msj3

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |